**T.J. JONES, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 72026.

Court of Criminal Appeals of Texas.

Dec. 18, 1996.

Rehearing Denied Feb. 19, 1997.

Mary Ann Rea, Longview, for appellant.

R. Clement Dunn, Assist. District Attorney, C. Patrice Savage, Assist. District Attorney, Longview, Matthew Paul, State's Atty., Austin, for State.

MEYERS, Judge.

## OPINION

Appellant was convicted of the offense of capital murder, specifically murder in the course of robbery. TEX. PENAL CODE, § 19.03(a)(2). The jury answered the punishment issues and appellant was sentenced accordingly to death. TEX.CODE CRIM. PROC. ANN. art. 37.071 §§ 2(b), (e), and (h).[1] Appeal to this Court is automatic. *Id.* at § 2(h). Appellant raises nineteen points of error. We will affirm.

### I. Sufficiency of the Evidence

In points of error one, two, and nineteen, appellant challenges the legal and factual sufficiency of the evidence at guilt/innocence. In points of error nine and ten, he argues that the evidence was legally insufficient to establish beyond a reasonable doubt that there were no mitigating circumstances sufficient to warrant a life sentence as opposed to the death penalty. *See* Art. 37.071 § 2(e). Appellant does not challenge the jury's affirmative answer regarding his future dangerousness. *See* Art. 37.071 § 2(b)(1).

### A. Guilt/Innocence

Appellant contends that the evidence is both legally and factually insufficient to establish that he *intentionally* caused the

1. Unless otherwise indicated, all references to articles are to those in the Texas Code of Criminal Procedure.

death of the victim.[2] He argues that he only intended to scare the victim and the fact the bullet hit the victim was accidental. Appellant does not otherwise challenge the sufficiency of the evidence. Therefore, we shall only set out the facts pertinent to appellant's claim.

The evidence at trial established that at approximately 1:00 p.m. on February 2, 1994, the seventy-five year old victim was found shot and lying in the street in front of his home in Longview. His car had been stolen. He was pronounced dead at the scene. Appellant was arrested a few blocks away with the murder weapon after abandoning the victim's car when it got a flat tire and he drove the car into some hedges. When apprehended by the police, appellant had the .357 revolver in his sweatshirt pocket. The weapon was fully loaded, except for one spent round, cocked, and ready to fire.

Dr. James Bruce, a forensic pathologist, testified that the victim died from a single gunshot wound to the head. The bullet entered near the center of the victim's forehead next to his left eyebrow, lacerating the brain and causing his left eye to collapse. Bruce testified that the shooter was at least three feet from the victim when the gun was fired. Glen Johnson, a firearms examiner, testified that the .357 revolver used in the crime was in perfect condition and all it's safety features were functioning normally. Therefore, Johnson concluded that the firearm could not be fired unless the trigger was pulled. Johnson further testified that appellant was at least two feet from the victim when the gun was fired.

Terry Graham, an acquaintance of appellant's and his cellmate at the Gregg County Jail, testified that appellant told him about the instant offense. Appellant told him that he and his accomplices saw the victim walking to his car. They approached the victim who said they could not have his car and that they would have to kill him to get it. Appellant stated that he then shot the victim.

Graham testified that appellant was very calm when he imparted the story.

Appellant's confession was also introduced into evidence and stated in pertinent part:

Today February 2, 1994 I went to Sanford's house on Avalon street in Longview. It was about 12:15 PM when I got there and he was at home along with a girl named Tisha and another dude named Edgar. * * * We were all setting [sic] around drinking gin and juice along with Bush [sic] and King Cobra. I asked them was they down for a jack (meaning going to steal a car). They all agreed that we would and then me, Tisha, Edgar, and Sanford left walking from Sanford's house and went over to 118 Edgefield [3] where Bobby stays. I told them we could go there to get a gun to do the jack. We got there and all of us went into the house. Walter Gordon was there and I borrowed a 357 pistol from him. I told him that I needed to borrow his gun so I could see if I could go to get a car. He gave me his gun and me, Tisha, Edgar, and Sanford left 118 Edgefield and walked toward Green street. We crossed over Green on Edgefield and I saw a white dude backing out of his driveway in a red car and I approached the car and told him to step outside. I had the gun out but I wasn't pointing it at him at that time. When he got out that's when Tisha, Edgar, and Sanford got in. * * * The white man was standing at the back of the car and I told him to get in and he said he wasn't because of his wife or something (but I don't know what else he said). I pointed the gun to the side of his head and I was trying to get him in the car to take him and rob him. When he wouldn't get in I decided to shoot to scare him into getting in the car. As soon as I shot I got scared and jumped in the car and drove off real fast. I didn't know that I had hit the old man I was just trying to scare him to make him get in the car so I could rob him. I didn't mean to kill him. * * * *

---

2. Appellant argues that the legal insufficiency of the evidence violates his rights under Article 1.04, Article 1, §§ 13 and 19 of the Texas Constitution, and the Eighth and Fourteenth Amendments of the U.S. Constitution.

3. Also known as the "Dawg House." *See* point of error three, *supra*.

## 1. Legal Sufficiency

 In reviewing a sufficiency question, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Mason v. State,* 905 S.W.2d 570, 574 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 717, 133 L.Ed.2d 670 (1996). The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State,* 876 S.W.2d 316, 321 (Tex. Crim.App.), *cert. denied,* 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Losada v. State,* 721 S.W.2d 305, 309 (Tex. Crim.App.1986).

 Viewed in the light most favorable to the verdict, the evidence shows appellant planned the robbery and brought with him a deadly weapon, a .357 revolver, in order to accomplish the task.[4] The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. *Ross v. State,* 861 S.W.2d 870, 873 (Tex.Crim.App. 1992); *Godsey v. State,* 719 S.W.2d 578, 581–82 (Tex.Crim.App.1986). Further, the evidence shows that the bullet struck the victim practically between the eyes and that appellant had to intentionally pull the trigger for the gun to fire. Finally, Graham testified that appellant shot the victim in response to the victim's statement that appellant would have to kill him to take the car. Applying the *Jackson* criteria to the facts of this case, we find a rational trier of fact could have found beyond a reasonable doubt that appellant intentionally caused the death of the deceased. **Points of error one and two are overruled.**

---

4. A firearm is defined as a deadly weapon. Tex. Penal Code § 1.07(a)(17)(A). However, a gun is not a deadly weapon *per se. Davis v. State,* 897 S.W.2d 791, 795 (Tex.Crim.App.1995). But, in the instant case, the evidence surely confirmed the gun was a deadly weapon in the manner of its use. Tex. Penal Code § 1.07(a)(17)(B); *see*

## 2. Factual Sufficiency

 We have acknowledged that this Court has the authority to review a case upon the facts as well as the law. *Clewis v. State,* 922 S.W.2d 126, 131–32 (Tex.Crim.App. 1996); *Bigby v. State,* 892 S.W.2d 864, 874 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995). We articulated the proper standard for a factual sufficiency review in *Clewis* for noncapital cases:

> [The court of appeals] views all the evidence without the prism of 'in the light most favorable to the prosecution.' . . . [and] set[s] aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

922 S.W.2d at 129, citing *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, *pet. ref'd* ). We now extend this standard of factual sufficiency review to capital cases. *See Bigby, supra;* Article 44.25.

 The factual sufficiency review process begins with the assumption that the evidence is legally sufficient under the *Jackson* test. *Clewis,* 922 S.W.2d at 134. The appellate court then considers *all* of the evidence in the record related to appellant's sufficiency challenge, not just the evidence which supports the verdict. The appellate court reviews the evidence weighed by the jury which tends to prove the existence of the elemental fact in dispute, and compares it to the evidence which tends to disprove that fact. *See, e.g., Ellis County State Bank v. Keever,* 915 S.W.2d 478, 479 (Tex.1995); *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994). The court is authorized to disagree with the jury's determination, even if probative evidence exists which supports the verdict. *Clewis,* 922 S.W.2d at 133; *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).[5]

---

*Dunn v. State,* 819 S.W.2d 510, 513 (Tex.Crim. App.1991), *cert. denied,* 506 U.S. 834, 113 S.Ct. 105, 121 L.Ed.2d 63 (1992).

5. We note that the Texas Supreme Court's holdings in civil cases such as *In re King's Estate, supra,* are useful in explaining the proper proce-

However, a factual sufficiency review must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder. *Clewis*, 922 S.W.2d at 133. The court's evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *See, e.g., Pool v. Ford Motor Company*, 715 S.W.2d 629, 635 (Tex.1986); *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *In re Thoma*, 873 S.W.2d 477, 485 (Tex.Rev. Trib.1994). The appellate court maintains this deference to the jury's findings, by finding fault only when "the verdict is against the *great* weight of the evidence presented at trial so as to be *clearly wrong and unjust.*" *Clewis*, 922 S.W.2d at 135. (Emphasis in original.) Examples of such a wrong and unjust verdict include instances in which the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *Clewis*, 922 S.W.2d at 135, citing *Meraz v. State*, 785 S.W.2d 146, 149 (Tex.Crim. App.1990). We explained this limitation on factual sufficiency analysis in *Clewis:*

> Appellate courts should only exercise their fact jurisdiction to prevent a manifestly unjust result; ... those courts 'are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable.'

*Clewis*, 922 S.W.2d at 135, quoting *Pool*, 715 S.W.2d at 634. Even if the reviewing court does discover that the verdict is against the great weight of the evidence and will return a manifestly unjust result, the court may not render or substitute its judgment for that of the jury. Its only option is to vacate the conviction and remand the case for a new trial.[6] *Clewis*, 922 S.W.2d at 133–35.

In the instant case, the only element of the offense in dispute is whether appellant *intentionally* killed the victim. We have previously held the evidence is legally sufficient under *Jackson v. Virginia*. *See* points of error one and two, *supra*. Therefore, we must now proceed to review the evidence considered by the jury both supporting and opposing the verdict.

We first note that appellant concedes he fired the gun and killed the victim. In his brief, he sets forth the following evidence as supporting his contention that he accidentally shot the victim: (1) he stated in his confession that he only wished to scare the victim and did not know the bullet had actually hit the victim before he fled, (2) there was no evidence of sooting or tattooing around the victim's wound, and (3) the weapon was at least two to four feet from the victim when it was fired. From this appellant concludes that because appellant did not fire the weapon at "point blank" range, his confession is corroborated in that he only meant to scare the victim. While the isolated statement by appellant in his confession may lend support to his argument that the shooting was accidental, that was not the only evidence the jury reviewed.

The following evidence pointed towards the intent of the shooting: (1) the victim was shot approximately between the eyes, (2) the weapon may have been as close as two to three feet from the victim, (3) Graham testified that appellant stated he shot the victim in response to the victim's statement that if appellant wanted his car that appellant would have to kill him; (4) appellant was not upset when he told Graham about the shooting, (5) the trigger had to be intentionally pulled in order for the gun to fire, (6) the robbery was preplanned including the foresight to obtain a .357 revolver, and (7) the gun had been fully loaded.

Although appellant presents probative evidence showing that he did not intentionally shoot the victim, there exists other probative evidence that he did. Due deference must be

---

dures to follow in conducting factual sufficiency analysis. Although many prior Texas cases define the standard for factual sufficiency review in different terms than we have used, these standards, as applied, are generally identical in meaning to the standard we articulated in *Clewis*. *Clewis*, 922 S.W.2d at 134, n. 16.

6. Were the case to be reversed under the *Jackson* review process, the appellate court would be required to render a judgment of acquittal; the theory being that a determination that the evidence is legally insufficient indicates that the case never should have been submitted to the jury. *Clewis*, 922 S.W.2d at 132–33.

accorded to the jury regarding the weight and credibility of the evidence. *Clewis*, 922 S.W.2d at 133. We see no reason to conclude that the jury's verdict is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Id.* Therefore, we hold that the jury's finding that appellant intentionally killed the victim is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Id.* at 129. **Point of error nineteen is overruled.**

### B. Punishment

■ Appellant's ninth and tenth points of error contend the evidence is constitutionally insufficient [7] to support the jury's "no" answer to the mitigation special issue. *See* Art. 37.071 § 2(e). He sets forth evidence of his youth, low intelligence, "social retardation," and a lack of bonding with his mother. Appellant argues that the State did not contest this evidence, therefore, he presented sufficient mitigating evidence for a life sentence to be imposed.

■ We have previously held that, while this Court can review objective evidence of future dangerousness, we cannot meaningfully review the jury's normative decision on mitigation, whether it answers in the affirmative or the negative. *Colella v. State*, 915 S.W.2d 834, 845 (Tex.Crim.App.1995); *see also McFarland v. State*, 928 S.W.2d 482, 498 (Tex.Crim.App.1996.), *cert. filed.* The weight

to be given a particular piece of mitigating evidence is left to each individual juror's own determination. *Colella*, 915 S.W.2d at 845. We further note that this lack of review does not violate the U.S. Constitution. *McFarland*, 928 S.W.2d at 498 n. 10; *Lawton v. State*, 913 S.W.2d 542, 557 (Tex.Crim.App. 1995). Therefore, we defer to the jury's conclusion that the evidence was not sufficient to warrant a sentence of life imprisonment. **Points of error nine and ten are overruled.**

### II. Confession

■ In his sixth point of error, appellant argues that his confession was improperly admitted because the State failed to present appellant to a magistrate in compliance with Articles 14.06(a) and 15.17 of the Texas Code of Criminal Procedure.[8] He contends that the State's failure to present him before a magistrate until three hours after his arrest was calculated to induce his confession which began two hours after his arrest. However, we note appellant did not challenge the confession on these grounds in his written motion to suppress or during the motion to suppress hearing, nor did he object to the confession on these grounds at trial.[9] Therefore, appellant has preserved nothing for our review.[10] TEX. R. APP. PROC. 52(a); *cf. Cantu v. State*, 842 S.W.2d 667, 679 (Tex.Crim.

7. Appellant argues that the legal insufficiency of the evidence violates his rights under Article 1.04, Article 1, §§ 13 and 19 of the Texas Constitution, and the Eighth and Fourteenth Amendments of the U.S. Constitution.

8. Article 14.06(a) reads:
 [T]he person making the arrest shall take the person arrested or have him taken without unnecessary delay before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, or, if necessary to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in a county bordering the county in which the arrest was made. The magistrate shall immediately perform the duties described in Article 15.17.
 Article 15.17 likewise provides that an arrestee shall be taken to a magistrate without unnecessary delay.

9. During the suppression hearing, appellant did ask one of the officers why appellant was not

immediately taken before a magistrate, but appellant did not suggest at that time that the delay in any way affected the voluntariness of the confession.

10. It is well-settled that the failure to take an arrestee before a magistrate in a timely manner will not invalidate a confession unless there is proof of a causal connection between the delay and the confession. *Cantu, infra,* 842 S.W.2d at 680. Appellant fails to demonstrate any connection here. Further, even if we held a three-hour delay unreasonable, the delay will not vitiate an otherwise voluntary confession if the arrestee was properly advised of his *Miranda* rights. *Id.* In the instant case, appellant was twice advised of his *Miranda* rights prior to his confession. *See Jenkins v. State*, 912 S.W.2d 793, 807 (Tex.Crim. App.1993)(not unreasonable delay when defendant not taken before magistrate until sixteen hours after arrest although one available; confessed in meantime).

App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). Point of error six is overruled.

In points of error seven and eight, appellant alleges that the trial court erred in overruling his motion to suppress and admitting his confession because it was not voluntary within the meaning of the Fifth Amendment and Article 1, Section 9 of the Texas Constitution. Appellant claims that his confession was involuntary because his low IQ, youth, and state of intoxication, when combined with the police's unreasonable delay in presenting him to a magistrate, rendered his choice to confess not essentially free and unconstrained.

The following evidence was elicited at the motion to suppress hearing. Between 1:08 p.m. and 1:30 p.m. on February 2, 1994, Longview Police Officer Henry Neal responded to the scene where appellant abandoned the victim's car. Within five minutes of getting descriptions and other information from witnesses, Neal apprehended appellant and one accomplice. Neal found a gun in appellant's sweatshirt pocket. Neal placed appellant under arrest and read him his *Miranda* warnings.[11] Appellant replied that he did not understand them because he was too drunk. However, Neal testified that appellant did not appear intoxicated because his speech was not slurred, he had no motor skill problems, and he did not smell of alcohol. On the way to the police station, Neal took appellant back to the wrecked car where he was tentatively identified by two witnesses, and then by the murder scene where Neal informed other officers that the suspects were in custody. Appellant arrived at the police station by 2:30 p.m.

At 3:40 p.m., Longview Police Sargent Ron Vick again read appellant his *Miranda* warnings. Vick had appellant read along with the written warnings and appellant indicated verbally that he understood each warning and also initialed each on the form. Vick further informed appellant that he was charged with

capital murder and the punishment could be either life or death. Appellant then indicated that he wished to talk. At 4:00 p.m., Vick began to type appellant's written statement. At 4:30 p.m., appellant reviewed and signed the statement. Vick testified that appellant was not intoxicated and that his speech and mannerisms appeared normal. Longview Police Officer Terry Davis, who was present for a portion of the confession, also testified that appellant did not appear intoxicated and there was no smell of alcohol in the small room where the confession was being taken.

During the hearing, appellant asked Vick if he knew whether appellant had actually finished nine years of school, whether he was mentally retarded, or whether he suffered from attention deficit disorder. Vick replied that he was unaware of any of these things. We note that appellant did not present any evidence showing that appellant had not finished nine years of school or that he had any mental deficiencies or disorders. Further, appellant presented no evidence showing how appellant's age, seventeen, would have any effect on the voluntariness of his confession.

■ At a suppression hearing, the trial court is the sole judge of the credibility of witnesses and the weight of their testimony. *Penry v. State,* 903 S.W.2d 715, 744 (Tex. Crim.App.), *cert. denied,* — U.S. —, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995); *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). Therefore, if the record supports the trial court's findings, we will not disturb those findings. We only consider whether the trial court properly applied the law to the facts. *Id.*

■ In the instant case, appellant mistakenly asks this Court to utilize evidence of his mental capacity and immaturity in addressing the voluntariness of his confession even though this evidence was not presented until the punishment phase of his trial. This we will not do. We may only review evidence that was before the trial judge when he was asked to render a decision on this

11. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (codified in Texas

matter.[12] *See Penry*, 903 S.W.2d at 744. Because appellant never challenged the voluntariness of his confession prior to its admission with regard to his mental capacity or his age, we hold that he has waived these arguments. TEX. R. APP. PROC. 52(a).

 Appellant argues further that he was intoxicated at the time he confessed and, therefore, his confession could not be voluntary. Intoxication, while relevant, does not render a confession involuntary *per se. Nichols v. State*, 754 S.W.2d 185, 190 (Tex. Crim.App.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989).[13] Instead, the question becomes whether the defendant's intoxication rendered him incapable of making an independent, informed decision to confess. *Id.* Appellant's evidence as to intoxication consists of his written statement that he had been drinking gin, beer, and malt liquor and his oral statement to Officer Neal at the time of his arrest that he was too drunk to understand. However, Officer Neal and Detective Vick both testified that appellant did not appear to them to be intoxicated. Appellant made no further showing as to whether his alleged intoxication rendered him incapable of making a voluntary decision to confess. We conclude the evidence supports the trial court's finding that appellant was not intoxicated at the time of his confession. Therefore, we hold that the trial court did not err by overruling appellant's motion to suppress and admitting his confession into evidence. **Points of error seven and eight are overruled.**

### III. Photographs

### A. Guilt/Innocence

In points of error eleven and twelve, appellant complains that the trial court erred in admitting into evidence two close-up photographs of the victim at the guilt/innocence phase of trial. Specifically, he alleges that the prejudicial nature of the photographs

substantially outweighed their probative value. TEX.R.CRIM. EVID. 403.

 When determining whether the trial court erred in admitting relevant photographs into evidence, our review is limited to determining whether the probative value of the photos is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX.R.CRIM. EVID. 403; *Long v. State*, 823 S.W.2d 259, 271 (Tex.Crim.App.1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992), citing *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Crim.App.1990) (op. on rehearing). The trial court's decision is reviewed under an abuse of discretion standard, and is disturbed on appeal only when the trial court's decision falls outside the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391.

 A court may consider many factors in determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice. These factors include: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black and white, whether they are close-up, and whether the body depicted is clothed or naked. *Long*, 823 S.W.2d at 272. A court, however, should not be limited by this list. The availability of other means of proof and the circumstances unique to each individual case should also be considered. *Id.*

 In reviewing the complained-of photographs, we note that both are in color and are 3 1/2′ × 5″ in size. Our review shows that State's exhibit 8 is the only close-up picture of the victim at the scene.[14] The photo was used by Longview Police Officer Greg Stewart to identify the victim and his condition at the crime scene. State's exhibit

as Article 38.22 § 2(a)).

**12.** Had appellant felt evidence of his immaturity and mental capacity were relevant to the instant issue, the evidence should have been presented to the trial judge prior to its admission into evidence.

**13.** Overruled on other grounds, *Green v. State*, 764 S.W.2d 242, 247 (Tex.Crim.App.1989).

**14.** The victim is covered by a sheet in all the other crime scene photographs introduced into evidence.

40, a close-up of the victim's head at the autopsy, was used by the forensic pathologist while explaining the wound causing the victim's death. We have consistently held that photographs are generally admissible where verbal testimony about the same matters is admissible. *Emery v. State*, 881 S.W.2d 702, 710 (Tex.Crim.App.1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). Although the pictures are somewhat gruesome and detailed, they are not enhanced in any way. Therefore, we cannot say that the trial court abused its discretion in holding that the probative value of the photographs outweighed the danger of unfair prejudice. **Points of error eleven and twelve are overruled.**

### B. Punishment

In appellant's third point of error, he asserts that the trial court improperly admitted eight allegedly irrelevant and prejudicial photographs relating to appellant's gang activity. TEX.R.CRIM. EVID. 401 and 403. We disagree.

Immediately prior to the admission of the pictures and without objection, Longview Police Street Gang Officer Wayne Bell testified about a known gang called the "G–Town Dawgs." Bell testified that the G–Town Dawgs were associated with such offenses as assaults, sexual assaults, robberies, and weapons offenses. He further testified about the existence and location of the "Dawg House" at 118 Edgefield and how he came into possession of the eight photographs in November, 1993. He further stated that the photographs depicted gang members known to him in front of the Dawg House. At this time, the State moved to admit the pictures into evidence. Of the eight photographs, appellant appears in six and each of the photos was taken in front of the Dawg House.[15] Many of the individuals in the pictures are holding various automatic weapons and are making gang signs with their hands.

Because appellant did not object under Texas Rule of Criminal Evidence 401 to the relevancy of any *testimony* concerning the gang in general and the activities in which it participates and because the pictures are merely a visual depiction of this evidence, he has waived error regarding the relevancy of the photographs. TEX.R.APP. PROC. 52(a); *Long v. State*, 823 S.W.2d at 271–72 n. 18 (photographs are admissible where testimony regarding the same is admissible); *Emery*, 881 S.W.2d at 710. However, the relevancy of the photographs is still pertinent to our analysis under Rule 403.

Rule 403 of the Texas Rules of Criminal Evidence states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *McFarland v. State*, 845 S.W.2d 824 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *see also Long*, 823 S.W.2d at 271. We have held that Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Joiner v. State*, 825 S.W.2d 701, 708 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 729 (1993). We have also held that questions of admissibility of evidence under Texas Rules of Evidence 402 through 404 are assigned to the trial court and are reviewable on appeal only for abuse of discretion. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994); *see also Narvaiz*, 840 S.W.2d at 429.

At the punishment phase of a capital trial, evidence regarding a defendant's character is relevant.[16] Article 37.071

---

15. In his brief, appellant asserts that he is only shown in three of the photographs. However, the unobjected-to testimony of Officer Bell indicates that he is identifiable in six of the photos.

16. Appellant complains that the photographs were irrelevant because he "was not identified with this group's criminal activity." However, appellant mistakenly characterizes this evidence as an extraneous offense. Officer Bell testified

§ 2(a); *see also Keeton v. State*, 724 S.W.2d 58, 61 (Tex.Crim.App.1987); *Wilkerson v. State*, 881 S.W.2d 321, 343 (Tex.Crim.App.), *cert. denied*, 513 U.S. 1060, 115 S.Ct. 671, 130 L.Ed.2d 604 (1994) (Baird, J., dissenting).[17] Evidence of gang membership is relevant to show the character of the defendant. *See* Article 37.071 § 2(b)(1); *Mason*, 905 S.W.2d at 576–77; *see also Anderson v. State*, 901 S.W.2d 946, 950 (Tex.Crim.App.1995) (gang membership relevant to show character in non-capital sentencing); *Beasley v. State*, 902 S.W.2d 452, 456 (Tex.Crim.App.1995) (non-capital).

■ Because the photographs were relevant to appellant's character, we must now determine whether the evidence was more prejudicial than probative. Officer Bell testified that when he received the photos in November, 1993, he was unaware of appellant's identity. However, shortly before the instant offense, Bell learned appellant's identity and received information that appellant was associated with the G–Town Dawgs. Bell also testified that appellant was not holding a weapon or making gang signs in any of the pictures. He further testified that appellant had not been associated with any of the gang's offenses. Bell stressed only that appellant associated with the members of the G–Town Dawgs. Additionally, other evidence introduced also would have led the jury to conclude appellant associated with this gang. At guilt/innocence, appellant's confession was introduced in which appellant stated he borrowed the murder weapon from someone at 118 Edgefield, otherwise known as the Dawg House. At punishment, appellant's girlfriend testified for the defense that she and appellant had at one time lived together at the Dawg House.

■ All testimony and physical evidence will likely be prejudicial to one party or the other. *See Joiner*, 825 S.W.2d at 708. It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable. In reviewing the record before us we cannot say that the probative value of the photographic evidence was substantially outweighed by its prejudice. **Point of error three is overruled.**

Appellant next complains that the trial court erred in not giving a simultaneous limiting instruction to the jury when the photos were introduced. He maintains the failure violated Texas Rule of Criminal Evidence 105(a) and our recent holding in *Rankin v. State*, —— S.W.2d ——, 1996 WL 165014 (Tex. Crim.App. 1996).[18]

■ In *Rankin*, the defendant requested a Rule 105(a) limiting instruction at the time the trial court admitted extraneous offense evidence at the guilt/innocence phase of his non-capital trial. We held that Rule 105(a) "requires a limiting instruction, upon proper request, when evidence is admitted." *Rankin*, —— S.W.2d at ——. Therefore, we held that the trial court erred by failing to give a simultaneous instruction and remanded the case to the court of appeals to determine whether such an error is subject to a harmless error analysis under Texas Rule of Appellate Procedure 81(b)(2). *Id.* We now hold that a harmless error analysis is applicable. *See id.* at —— (McCormick, P.J., dissenting); *see also Huddleston v. U.S.*, 485 U.S. 681, 690–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988); *U.S. v. Brawner*, 32 F.3d 602, 605–07 (D.C.Cir.1994) (Ginsburg, J.), *overruled in part*, *U.S. v. Rhodes*, 62 F.3d 1449 (D.C.Cir. 1995); *U.S. v. Bruner*, 657 F.2d 1278, 1285–

---

that appellant was *not* associated with any of the gang's *offenses*, only that appellant associated with the gang. Although, unadjudicated extraneous offenses are admissible during the punishment phase of a capital trial, the State introduced this evidence to show appellant's character—not his participation in the gang's various criminal offenses.

**17.** See also Texas Rule of Criminal Evidence 404(c) which states that character evidence, including the accused's prior criminal record, is relevant at the punishment phase of trial.

**18.** Rule 105(a) states:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

86 (D.C.Cir.1981); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 266 (5th Cir.1980) (holding admission of evidence not properly limited was harmless); *Commonwealth v. Covil*, 474 Pa. 375, 378 A.2d 841, 845 (1977).

In the instant case, we conclude that the trial court erred by failing to grant appellant's request for a limiting instruction at the time the photos were introduced into evidence.[19] *Rankin, supra.* Appellant alleges on appeal this error harmed him because the jury was left with the impression that he was a participant in the G–Town Dawgs various criminal offenses. We disagree.

Any prejudicial effect caused by the *Rankin* error was limited by various factors. First, the photos were not introduced to prove appellant committed a criminal offense, nor did the State argue that appellant was ever involved in the gang's offenses. The State's witness, Officer Bell, clearly testified that appellant had never been associated with any of the gang's offenses. He further testified that appellant was not holding any weapons or making any gang signs in any of the pictures. During closing argument, the State specifically told the jury that the photos "were introduced for the sole purpose to show [appellant] is a member of the G–Town Dawgs, not to show his participation in any crime. But that goes to [appellant's] character." Secondly, the extent of other evidence introduced outweighed any prejudicial effect that might have been caused. The State introduced psychiatric evidence, evidence of the increasing violence of appellant's criminal record, and evidence of an attempted murder appellant committed four days before the instant offense in which he shot a man three times without provocation during a robbery. Finally, appellant did receive a limiting instruction, *see* fn. 22, *supra*, in the punish-

ment charge which further reduced the risk the jury might misuse the evidence during jury deliberations. For these reasons, we conclude that admitting the photos without a simultaneous limiting instruction was harmless beyond a reasonable doubt. **Point of error four is overruled.**

## IV. Jury Charge

In his fifth point of error, appellant contends the trial court erred in failing to include a jury instruction at punishment cautioning the jury to only consider those extraneous offenses proved beyond a reasonable doubt to have been committed by appellant. As appellant concedes, this Court has held that the failure to give such an instruction is not error when the charge, as here, properly sets forth the State's burden of proof. *Coble v. State*, 871 S.W.2d 192, 208 (Tex.Crim.App.1993), *cert. denied*, 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994); *Marquez v. State*, 725 S.W.2d 217, 226 (Tex.Crim.App.), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987); *Santana v. State*, 714 S.W.2d 1, 11 (Tex.Crim.App.1986). Appellant raises no novel arguments to persuade us to revisit these holdings. **Point of error five is overruled.**

## V. Appellate Record

In his thirteenth point of error, appellant asks this Court to reverse his conviction because the appellate record is incomplete. Specifically, appellant states that six bench conferences were not recorded by the court reporter during trial.[20] He posits that the trial court failed to enforce its order directing the court reporter to record all proceedings, including all conferences held

---

**19.** The trial court did give a limiting instruction in the punishment charge:

> You are further instructed that in your consideration of and deliberations on Exhibits 48 through 56, you should limit your consideration and deliberation to the depiction of gang activity as it relates to the defendant, if they do, as that is relevant, if it is, to either of the special issues submitted. You should not infer any specific criminal activity from the exhibits themselves.

Appellant did not object to this instruction.

**20.** The notations in the record regarding the bench conferences are as follows:

> (REPORTER'S NOTE: At this point in the proceedings, a Bench conference was held outside the hearing of the Court Reporter and the Jury, after which the following proceedings were had:)

outside the presence of the jury. We disagree.

In *Walthall v. State*, 594 S.W.2d 74 (Tex.Crim.App.1980),[21] we stated:

> While appellant had requested that the trial proceedings be recorded, it was nevertheless incumbent on him to object if the bench conferences were not held within the hearing of the reporter or recorded by her. Appellant did not object during the trial, nor did he object to the record after being notified of its completion. [Citation omitted.] Moreover, appellant has neither shown nor alleged that anything pertinent took place in the unrecorded conferences. Reversible error is not presented.

*Id.* at 81; *Phillips v. State*, 701 S.W.2d 875, 894 (Tex.Crim.App.1985), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986).[22] *See also Schneider v. State*, 645 S.W.2d 463 (Tex.Crim.App.1983)(reporter failed to transcribe voir dire despite written request); *Wells v. State*, 578 S.W.2d 118 (Tex.Crim.App.1979)(reporter failed to transcribe guilty plea hearing because no request made at the time).

Appellant did not object at trial to the court reporter's failure to record the bench conferences nor did he raise these omissions in his objections to the record. We further note that the trial court informed both parties at the beginning of trial that "unless it is a matter that requires a *hearing outside the Jury*, the objections shall be stated in open court, *not in any Bench conference.*" (Emphasis added). Therefore, we shall assume that appellant complied with the trial court's order and made all pertinent objections in open court or in a hearing. Therefore, no reversible error is shown. *Phillips*, 701

S.W.2d at 894; *see also Emery v. State*, 800 S.W.2d 530, 535 (Tex.Crim.App.1990), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995) (sets out various scenarios and when complaint is waived). **Point of error thirteen is overruled.[23]**

## VI. Tex.Code Crim. Proc. Ann. art. 37.071

 In points of error fourteen and fifteen, appellant maintains that the Texas death penalty has been arbitrarily imposed and is unconstitutional because of the different capital sentencing schemes that have been in effect since 1989. He specifically states that the Texas death penalty is unconstitutional under the Eighth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and Article 1 § 13 of the Texas Constitution.

 As we held in *McFarland:* "[I]t is incumbent upon the defendant to show that in its operation the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient." 928 S.W.2d at 521, citing *Santikos v. State*, 836 S.W.2d 631, 633 (Tex.Crim.App.), *cert. denied*, 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992). Appellant was tried under the 1993 version of Article 37.071 which we have held elsewhere in this opinion to be constitutional.[24] *See* points of error sixteen, seventeen, and eighteen, *infra.* Because appellant has simply made a global argument as to all capital defendants since 1989, and has not shown how his specific rights were violated by application of the statute, his contentions are without merit. *See also*

---

**21.** This and the other cited cases for point of error thirteen that are dated prior to 1986 rely on former Article 40.09. The law governing lost records is now codified in Tex.R.App. Proc. 50(e). However, the analysis in these cases continues to apply in the instant situation. *See Emery v. State*, 800 S.W.2d 530, 535 (Tex.Crim.App.1990).

**22.** Overruled on other grounds, *Hernandez v. State*, 757 S.W.2d 744, 751–52 n. 15 (Tex.Crim.App.1988), overruled on other grounds, *Fuller v. State*, 829 S.W.2d 191, 200 (Tex.Crim.App.1992).

**23.** Appellant also states in his brief that the trial court's responses to three jury notes fail to ap-

pear in the record. Appellant filed a Motion to Supplement the Statement of Facts. We granted this Motion, however, no additional record has been filed. Appellant has taken no further action and does not complain further regarding this matter on appeal. ~~Note:~~ Each of the three jury notes requested specific pieces of physical evidence and photographs. One response does appear in the record and consists of the trial judge asking by written note: "Are you requesting all exhibits?" (Emphasis in original).

**24.** This version is applicable to crimes committed on or after September 1, 1991.

*Lawton*, 913 S.W.2d at 559–60. **Points of error fourteen and fifteen are overruled.**[25]

In point of error sixteen, appellant maintains that the statutory *Penry*[26] issue violates the Eighth and Fourteenth Amendments because it permits "the very type of open-ended discretion condemned by the United States Supreme Court in *Furman v. Georgia.*"[27] *See* Article 37.071 § 2(e). We have previously decided this issue against appellant. *McFarland*, 928 S.W.2d at 520; *see also Lawton*, 913 S.W.2d at 558. **Point of error sixteen is overruled.**

In appellant's seventeenth point of error, he alleges that the Texas death penalty as a whole constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. Appellant adopts the arguments· of Justice Blackmun's dissenting opinion in *Callins v. Collins*, 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994), in which Justice Blackmun concluded that competing requirements of the federal constitution expressed in *Furman* and *Penry* are ultimately irreconcilable. We have also previously addressed this issue against appellant. *McFarland*, 928 S.W.2d at 520; *Lawton*, 913 S.W.2d at 558.[28] **Point of error seventeen is overruled.**

Finally, in point of error eighteen, appellant avers that the Article 37.071 definition of "mitigating evidence" is unconstitutional because it limits the Eighth Amendment concept of "mitigation" to factors that render a capital defendant less morally blameworthy for the commission of the offense.[29] He specifically claims that the definition is too narrow because it does not include evidence relevant to "a defendant's character, history, or circumstances of the crime that militates in favor of a life sentence."

In the abstract portion of the charge, a "mitigating circumstance" is defined as including, "but is not limited to, any aspect of the defendant's character, background, record, emotional instability, intelligence or circumstances of the crime which you believe could make a death sentence inappropriate in this case." Thus, appellant's point is without merit. *See McFarland*, 928 S.W.2d at 518. Point of error eighteen is overruled.

Finding no reversible error, we affirm the judgment of the trial court.

McCORMICK, P.J. concurs in the result.

WHITE, J., not participating.

---

**25.** Under his fifteenth point of error, appellant also posits that we should interpret the Texas Constitution in a more expansive manner because the Texas Constitution proscribes "cruel *or* unusual punishments" while the Eighth Amendment prohibits "cruel *and* unusual punishments." Without further substantive citation or authority, he claims that this is the reason we should hold his present claim meritorious. We consider this argument inadequately briefed, presenting nothing for review. Tex.R.App. Proc. 74(f); *McFarland*, 928 S.W.2d at 521.

**26.** *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

**27.** *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

**28.** Appellant also "observes that, even in the 1990's, systematic racism continues to plague the Texas death penalty, particularly regarding racial discrimination based on the race of the victim." Appellant, however, makes no argument as to how this affected him or the constitutionality of the statute. Therefore, we shall consider this issue inadequately briefed. Tex.R.App. Proc. 74(f).

**29.** Article 37.071 § 2(f)(4) states that the jury shall be charged that in answering the [third special issue], the jury:

> shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness.