In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00033-CR
______________________________


RICHARD CHRISTOPHER BURDICK, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 21,171


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Richard Christopher Burdick appeals his conviction by a jury for aggravated robbery with
a deadly weapon. The jury found at least one of the enhancement paragraphs true and assessed
Burdick's punishment at twenty years' imprisonment. Burdick argues that the evidence is factually
insufficient to support the jury's verdict. We affirm the trial court's judgment.
            On March 5, 2002, two or more intruders gained entry into Jason Campbell's house in
Commerce, Texas. Charity Wilfred was asleep in Campbell's bedroom. Although Campbell had
spent the night at the residence, he had already left for work before the robbery occurred. Wilfred
awoke with a gun pointed at her head. She observed two intruders in the bedroom, a black man and
a white man. Wilfred recognized the white male intruder who was holding the gun, although she
could not remember his name. Wilfred testified she had met the intruder on several prior occasions. 
A bow, nine guns, and other items were stolen from the house. Wilfred later identified Burdick in
a photographic line-up and at trial as the intruder holding the gun. 
            Burdick argues the evidence is factually insufficient to sustain his conviction for aggravated
robbery with a deadly weapon. Burdick makes four arguments in support of his contention the
evidence is insufficient: 1) the State's witnesses gave perjured testimony; 2) there was no evidence
he ever possessed the stolen items; 3) the door was kicked from the inside; and 4) the evidence did
not sufficiently identify him as the intruder.



            A factual sufficiency review dictates that the evidence be viewed in a neutral light, favoring
neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In determining the factual
sufficiency of the evidence to establish the elements of the offense, we view all the evidence in a
neutral light and set aside the verdict only if it is so contrary to the great weight of the evidence as
to be clearly wrong, or so weak as to be clearly wrong or manifestly unjust. Id. However, "[t]he
court's evaluation should not substantially intrude upon the jury's role as the sole judge of the weight
and credibility of witness testimony." Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).
            First, Burdick argues the State's witnesses gave perjured testimony concerning their sleeping
arrangements the night before the burglary and concerning a voice mail message left by Campbell. 
Although Campbell testified he and Wilfred slept in the same bed the night before, Wilfred testified
Campbell slept on the couch. John and Patina Gunther, friends of Burdick, testified Campbell left
a message on John Gunther's voice mail which claimed that four African-Americans robbed his
house. Campbell denied saying four African-Americans robbed his house, but claimed he left a
message that one African-American man and one white man robbed his house. Burdick testified that
he had heard the message and that Campbell was lying as to its contents. Inconsistent testimony
simply raises credibility issues. "The court's evaluation should not substantially intrude upon the
jury's role as the sole judge of the weight and credibility of witness testimony." Id. Since credibility
issues are the sole province of the jury, this Court will not disturb the jury's conclusion unless it is
against the great weight of the evidence or so weak as to undermine confidence in the verdict. The
inconsistent statements do not undermine the witnesses' testimony to the extent necessary to make
the evidence so weak as to be clearly wrong or manifestly unjust. 
            Second, Burdick contends none of the stolen items were ever shown to be in his possession. 
While finding the stolen items in the possession of a defendant is rather persuasive evidence he is
guilty, the converse is not true. The State was only required to prove Burdick exhibited a deadly
weapon and placed Wilfred in fear of imminent bodily injury or death while in the "course of
committing theft." See Tex. Pen. Code Ann. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 2003). In the
"course of committing theft" means "conduct that occurs in an attempt to commit, during the
commission, or in immediate flight after the attempt or commission of theft." Tex. Pen. Code Ann.
§ 29.01(1) (Vernon Supp. 2004). A person commits the offense of theft if he or she appropriates
property with intent to deprive the owner of the property without his or her effective consent. Tex.
Pen. Code Ann. § 31.03 (Vernon 2003). Wilfred testified Burdick held a gun to her head while the
men were wrapping the stolen guns in a blanket. She was "very scared" and thought she might die. 
Campbell testified he did not give consent to anyone to remove the guns from his house. Based on
Wilfred's and Campbell's testimony, sufficient evidence exists that Burdick exhibited a deadly
weapon, placing Wilfred in fear of imminent bodily injury or death while appropriating property
without effective consent. The fact the stolen items were not found in Burdick's possession is not
evidence sufficient to make the great weight of the evidence indicate that the result was clearly
wrong. 
            Third, Burdick asserts the evidence clearly indicates the door had not been kicked in from
the outside of the house. Burdick contends it is obvious from the photographs taken at the scene the
door had been kicked from inside the house. Burdick bases this contention on the way the door had
been broken and the fact that the majority of the glass fell on the outside of the house. Burdick fails
to direct us to any indication in the record, other than the photographs themselves, which supports
the conclusion that the door had been kicked in from the inside rather than the outside. The
photographs themselves do not clearly indicate how the door was kicked open. Burdick appears to
argue that, if the door had been kicked in from the inside, doubt would be created as to whether the
State's version of the facts were true. Regardless of whether this fact would create doubt as to the
State's version of the facts, it certainly does not make the evidence so weak as to be clearly wrong
or manifestly unjust.
            Last, Burdick argues the evidence did not sufficiently prove he was one of the intruders. At
trial, Wilfred originally indicated doubt as to whether Burdick was one of the intruders. She testified
he looked "quite a bit different" now than he had at the time of the robbery. Wilfred testified the
intruder had "longer hair" and a darker complexion. Burdick argues he has never had long hair and
does not have dark skin. When asked by the defense attorney whether she was ever shown a
photographic line-up of any suspects with long hair, Wilfred clarified her answer, explaining she
meant his hair was "longer than he has now." Eventually, the State showed Wilfred the photographic
line-up in which she had previously identified Burdick as the intruder. After viewing the
photographic line-up, Wilfred testified Burdick was the intruder. Wilfred testified that, when she
identified the defendant in the photographic array, she had no doubt the picture she identified was
a picture of the intruder.


 Investigator Seals testified Wilfred identified Burdick's photograph as the
person who was in the house during the robbery. Testimony of a single eyewitness has been held
sufficient. Garza v. State, 82 S.W.3d 791, 793 (Tex. App.‒Corpus Christi 2002, no pet.) (store
employee identified defendant, who was a frequent customer, as the perpetrator); Davis v. State, 831
S.W.2d 839, 842 (Tex. App.‒Dallas 1992, pet. ref'd) (affirming aggravated robbery conviction
where only one eyewitness identified the defendant, who presented five alibi witnesses). While the
weight of Wilfred's identification may be diminished by the hesitancy of the identification, we must
defer to the jury's determination of weight and credibility. "When reviewing the evidence, our role
is not to become a thirteenth juror. This Court may not re-evaluate the weight and credibility of the
record evidence and thereby substitute our judgment for that of the fact-finder." Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 
            While the robbery was occurring, Wilfred recognized the intruder with the gun as someone
she knew, although she could not remember his name. Wilfred testified that the intruder with the
gun was wearing a white t-shirt, but that she recognized him as someone she knew based partially
on the unique tattoos bearing Old English letters on his chest and back, as well as other tattoos on
his arms. Wilfred also recognized him as a person with whom she had played video games with at
Campbell's house, given a ride back to Campbell's house from a bar once, and who had received a
puppy from a litter her dog had. Campbell supplied Burdick's name when she asked him the name
of the guy to whom she gave the puppy. Burdick contends Wilfred could not have identified him
by his tattoos since the robber had worn a white t-shirt. "[A] factual sufficiency review must be
appropriately deferential so as to avoid the appellate court's substituting its own judgment for that
of the fact finder." Jones, 944 S.W.2d at 648. Whether Wilfred would have been unable to identify
Burdick due to the white t-shirt is a fact issue on which we must defer to the jury's determination
unless clearly wrong. We cannot say that the great weight of the evidence indicates the verdict is
clearly wrong or that the evidence is so weak as to be clearly wrong or manifestly unjust.
            All of Burdick's arguments focus on credibility of the witnesses. "The court's evaluation
should not substantially intrude upon the jury's role as the sole judge of the weight and credibility
of witness testimony." Id. In order to reverse the trial court, the great weight of the evidence must
indicate the verdict to be clearly wrong, or the evidence must be so weak as to be clearly wrong or
manifestly unjust. Viewed in a neutral light, the great weight of the evidence does not indicate
Burdick did not commit the crime in question. Due to the identification of Burdick as the intruder,
we cannot say the evidence is so weak as to be clearly wrong or manifestly unjust. 
            For the reasons stated, we affirm the judgment.
 


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          November 4, 2003
Date Decided:             November 5, 2003

Do Not Publish