



## MEMORANDUM OPINION

No. 04-09-00478-CR

Elizabeth **GARZA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No 4, Bexar County, Texas
Trial Court No. 956959
Honorable Sarah Garrahan-Moulder, Judge Presiding

Opinion by:     Rebecca Simmons, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  May 12, 2010

AFFIRMED

Appellant Elizabeth Garza was charged with the misdemeanor offense of driving while intoxicated (DWI). A jury found her guilty of the offense and the trial court assessed punishment at 180 days confinement in the Bexar County Jail and a $500 fine. Both the fine and confinement were probated. Garza appeals her conviction, alleging that the evidence was factually insufficient to support the DWI conviction. We affirm the judgments of the trial court.

**FACTUAL BACKGROUND**

On February 25, 2006, at approximately 3:00 a.m., San Antonio Police Officer Carlos Bishop was on duty when he saw an accident involving an eighteen-wheeler and a pick-up truck. Officer Bishop noted that, when he arrived at the scene, the vehicles were still smoking from the recent impact. Officer Bishop approached the driver's side window of the pick-up truck, and observed Garza behind the wheel. When asked if she was okay, Garza indicated that she was not injured.

Officer Bishop observed that Garza appeared "disoriented, kind of confused," exhibited slurred speech, bloodshot and glassy eyes, and her clothes were disorderly and "kind of in a disarray." Additionally, Garza had "a strong odor of intoxicants on her breath" and informed Officer Bishop that she had just come from a local bar. In fact, Officer Bishop noted she was still wearing a wristband consistent with the type nightclubs use with their patrons. Furthermore, Garza admitted she had been drinking that evening. After conducting several field sobriety tests, Officer Bishop determined that Garza had lost the normal use of her mental and physical faculties and placed Garza under arrest for DWI.

**FACTUAL SUFFICIENCY**

In her sole issue on appeal, Garza argues the evidence was factually insufficient to support her conviction. Garza's father testified that Garza suffered a fractured jaw and produced pictures, taken the day after the accident, showing visible bruising and swelling. More specifically, Garza argues her disorientation and behavior are more consistent with the injuries she sustained as a result of the accident than with intoxication.

## A. Standard of Review

When considering a factual sufficiency challenge, an appellate court looks at the evidence in a neutral light giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

## B. Driving While Intoxicated

To support a DWI conviction, the evidence must show that Garza drove a motor vehicle while intoxicated on a public road, street, highway, or alley. TEX. PENAL CODE ANN. § 49.04 (Vernon 2003). Intoxicated means: "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, . . . or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more." *Id*. § 49.01(2)(A), (B). A person's failure to have the normal use of her mental or physical faculties may be proven by circumstantial evidence. *See Smithhart v. State*, 503 S.W.2d 283, 284 (Tex. Crim. App. 1973).

## C. Evidence of Intoxication

### 1. Visual Indicators of Intoxication

Officer Bishop testified that when he approached Garza's vehicle, she appeared disoriented and confused, stumbled when she exited the vehicle, leaned against her vehicle for balance, exhibited slurred speech, had red, glassy eyes, smelled strongly of intoxicants, and was extraordinarily emotional and talkative. Based on his observations, Officer Bishop administered several field sobriety tests on Garza. *See Cotton v. State*, 686 S.W.2d 140, 143 n.3 (Tex. Crim.

App. 1985) (enumerating a nonexclusive list of signs recognized as evidence of intoxication, including odor of alcohol on person or breath, drowsiness, unsteady balance, staggered gait, slurred speech, and bloodshot eyes). More specifically, Officer Bishop administered the: (1) walk-and-turn test where Garza exhibited possible clues of intoxication including an inability to maintain balance, failure to touch heel-to-toe, raising her arms for balance, turning incorrectly, and beginning before instructed; (2) the one-leg stand test where Garza swayed, used her arms for balance, hopped, and put her foot down; and (3) the Romberg balance test where Garza exhibited a circular sway and kept opening her eyes even when instructed to keep them closed.

*2. HGN Test*

Garza argues that her performance on the HGN test should not be considered for purposes of factual sufficiency because the officer failed to take into consideration the possibility of a head injury due to her injuries sustained during the accident. The jury, however, heard Officer Bishop's qualifications and experience administering the test and his testimony that when he administered the HGN test on Garza that she revealed several clues to indicate intoxication, including lack of smooth pursuit and involuntary jerking of both eyes during two different tests.

*3. Refusal to Provide Breath Specimen*

After being read the statutory warnings, Garza agreed to provide a breath specimen. Yet, when the operator instructed Garza to "blow into the machine," Garza failed to do so; and after several attempts, Garza ultimately refused to give a breath specimen. "A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial." TEX. TRANSP. CODE ANN. § 724.061 (Vernon 1999).

Garza argues that her "refusal" to provide a breath specimen was not a refusal, but instead a physical inability due to her broken jaw. According to Garza, the fact that she had a fractured jaw from the accident is evidence of her inability to perform the test, not a refusal. Importantly, however, Officer Bishop testified that on the evening in question, Garza did not complain of injuries or that she was experiencing pain in her jaw.

### 4. *Admission of Alcohol Consumption*

Other evidence of intoxication included Garza's admission that she had been drinking at a local bar called Planeta Bar Rio. Officer Bishop testified that Garza acknowledged that she had been drinking, but that "she did not feel intoxicated." During trial, Garza's father testified that when he arrived at the scene of the accident, he also smelled alcohol on her breath and, at the time, did not believe Garza required medical services before being booked into the county jail. Garza's father further testified that Garza acknowledged drinking at least three drinks that evening. Furthermore, the defense offered Garza's medical records from University Hospital which provided that Garza told the nurse that: she "hit a pole with her truck," she did "not remember the accident at all," did not know if she had passed out, "she had been at a club with friends drinking," and "she had three hard liquor drinks."

There is no question that Garza suffered injuries as a result of the accident and, during her case in chief, she presented evidence regarding the extent of these injuries. Foremost, the Adult Detention Center refused to accept Garza for booking and instead transferred her to the hospital. At the hospital, the physician noted a potential head injury and instructed Garza to follow-up with her personal physician. Finally, Garza's personal doctor diagnosed a broken jaw and her father offered pictures showing the extensive bruising and swelling on her face.

Based on the record before us, however, we cannot agree that the evidence is so weak that the verdict is clearly wrong and manifestly unjust. *Watson*, 204 S.W.3d at 414-15. The testimony of Officer Bishop, outlined above, regarding his opinion that Garza was intoxicated is sufficient to establish intoxication. *See Little v. State*, 853 S.W.2d 179, 183 (Tex. App.—Corpus Christi 1993, no pet.). Given this evidence, we conclude that the evidence of Garza's intoxication is not so weak as to make the verdict seem clearly wrong or manifestly unjust. *See Mills v. State*, 99 S.W.3d 200, 204 (Tex. App.—Fort Worth 2002, pet. ref'd) (holding evidence factually sufficient when defendant's breath smelled like alcohol, his eyes were red and glassy, his posture unsteady, he failed sobriety tests, he personally admitted to drinking, and refused to give breath sample).

Likewise, we disagree that the verdict is against the great weight and preponderance of the evidence. *Watson*, 204 S.W.3d at 414-15. During trial, Garza's counsel presented evidence and extensively cross-examined Officer Bishop regarding Garza's actions being more consistent with injuries as opposed to intoxication. To the extent the evidence could be viewed as conflicting, an appellate court must give due deference to the jury with regard to issues of credibility and to weight-of-the-evidence determinations. *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). Although Garza argues that Officer Bishop's testimony was so "vague and inconsistent" that it rendered his testimony "entirely without credibility," the jury is the "exclusive judge of the credibility of witnesses and of the weight to be given their testimony." *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). As such, the jury was free to believe or disbelieve Officer Bishop's testimony. Based on the record before us and considering the evidence cited by Garza, the jury in this case was in the best position to reconcile

any perceived conflicts and to weigh the evidence, and we give proper deference to those determinations. *See id*.

**CONCLUSION**

Accordingly, after viewing all of the evidence in a neutral light, we cannot conclude that the evidence is so weak that the verdict is clearly wrong and manifestly unjust or that the verdict is against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414. Accordingly, the evidence is factually sufficient to support Garza's conviction and we overrule Garza's sole issue on appeal.

Rebecca Simmons, Justice

DO NOT PUBLISH