TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00307-CR






Gregori Patrick Pierce, Appellant



v.



State of Texas, Appellee






FROM COUNTY COURT AT LAW NO. 2 OF TOM GREEN COUNTY


 NO. 99-00888L2, HONORABLE DAVID READ, JUDGE PRESIDING 






 A jury convicted Gregori Patrick Pierce of the offense of assault causing bodily
injury to a family member. The jury assessed sentence at one year's confinement and a $2,000
fine; the sentence and fine were probated for a year. Pierce complains on appeal that the court
deprived him of his constitutional right to cross-examine witnesses by prohibiting him from cross-examining the complaining witness on her mental stability. He also contends that the evidence is
factually insufficient to support his conviction. We will affirm the conviction and sentence.


BACKGROUND


 An altercation occurred between spouses Terry Lee Pierce and appellant(1) on
February 15, 1999. Appellant (6'6 tall) admits to grabbing Terry (5'8 or 5'9) during this
altercation; the dispute in the testimony was over the nature, duration, and cause of that contact.

 Terry testified that she went to Steve Wood's house to talk with appellant. (Wood
testified that appellant was helping him patch a hole in a wall.) Terry wanted to talk about
appellant's son, Arthur, who was telling her three children to lie to cover the fact that Arthur was
sneaking people into the house in violation of his probation. She testified that she saw marihuana
on Wood's kitchen table and that appellant was drunk, raised his voice, and was vulgar, so she
went home. She said appellant arrived at her house about ten minutes later and began getting some
dress clothes; when she asked what he was doing, he told her it was none of her business. He then
went into the bathroom to take a shower. She followed him in to resume their conversation
outside the hearing of the children; she said he had just started running the water. Terry tried to
open the shower curtain partway to communicate with him. The curtain and rod fell; she denied
pulling it hard, saying it was broken and had fallen many times. She said she tried to give the
curtain to appellant, but he threw it against the wall. Terry testified that after throwing the curtain
away, appellant grabbed her face, digging his nails into the left side of her face. When he realized
she was bleeding, he threw a towel at her to wipe off the blood (perhaps, as she told police, to
keep others from seeing it). 

 Terry dialed 911, but hung up before talking to anyone because she heard appellant 
doing something. She went to look for her children in their room. Not finding them there she
turned to leave and saw appellant standing in the door nude. He grabbed her throat with both
hands and told her he was going to kill or beat her. After two or three minutes, her legs buckled
because she could barely breathe. When he released her, he pushed her back against the wall. 
She got up to look for her children, but saw appellant's son, Arthur, standing with a wooden stick
not moving. 

 She called 911 and asked for police and paramedics. When appellant heard her
talking to the 911 operator, he got in his truck and waited. The police told her that they were
arresting appellant for assault and because he was drunk. The police took photographs of her
condition; these were published to the jury and admitted into evidence. She said the paramedics
treated her scratched face, but concluded that the strained muscles and bruises on her neck did not
require hospital treatment. She got an emergency protective order against appellant.

 Terry denied that the curtain rod hit her or scratched her, and refused to identify
a shower curtain rod that appellant identified as the rod in question. She admitted to yelling at
appellant, but denied turning off the cold water in his shower or hitting him. She denied drinking
at the time of the incident because she was taking Lortab and Soma, a painkiller and muscle
relaxer, respectively, to cope with spinal discs ruptured in a car accident. Soma's side effects
include confusion, difficulty hearing, dizziness, trembling, unsteadiness, unusual weakness, and
drowsiness, among others. Lortab's side effects also include dizziness, pinpoint pupils, drowsiness,
and confusion, among others.

 Terry's November 1999 written statement differed in small details. She wrote that
she was talking to appellant about his being drunk and high and going out again. She wrote that
the children were present and yelling while appellant was nude and choking her (though she
clarified at trial that they were not in the room with her and appellant at that time). She also wrote
that appellant's son came at her with a bat.

 Appellant agreed with parts of Terry's testimony, but diverged on critical details. 
He admitted arguing with Terry about Arthur. Appellant testified that he was showering to go to
dinner with his mother. He said he was already washing his hair when Terry slammed the
bathroom door, yelled at him, and pulled the shower curtain open, inadvertently pulling the rod
and curtain down. He said the rod and curtain hit Terry on the right cheek; she turned off the cold
water, scalding him, hit him in the chest with her fist, and left. He got out of the shower and was
drying off when Terry re-entered the bathroom. He testified that she pulled his towel off, hit him
again, and blocked the doorway. He said he grabbed her by the throat with his left hand and
pushed her straight back against the wall to make her stop hitting him and to get by her; otherwise,
he said, she would have continued hitting him. He denied scratching her face with his hands or
holding her against the wall for two or three minutes. When his son came into the house, he let
her go and got dressed. Upon learning that she called 911, he waited in his truck for the police.

 He admitted that he did not tell police Terry assaulted him, nor did he seek
treatment for burns to his legs; he said, however, police and paramedics did not let him do either.
He denied drinking on the day of the incident.

 San Angelo police officer Clay Wieting responded to the domestic disturbance call. 
He found Terry upset, bleeding from her left cheek, and with bruises on the right side of her neck. 
Wieting's testimony regarding the appellant's and Terry's statements at the scene essentially
matched their testimony at trial. Wieting said appellant had no injuries, did not claim scalding or
self-defense, and did not deny the assault on Terry. Wieting testified that appellant's son did not
see the incident. Wieting said he saw no other children. Wieting also testified that appellant
smelled of alcohol and had bloodshot eyes and slurred speech.

 San Angelo police officer Ed Hunger also responded to the call. Hunger testified
that appellant told him that his refusal to argue with Terry caused her to pull down the shower
curtain; the rod or curtain cut her face. Appellant denied hitting Terry. Hunger could not recall
if appellant had been drinking.

 Steve Wood testified that, when Terry came to his house to talk to appellant, she
and appellant had a verbal disagreement that seemed normal and that she left. Wood said Terry
then called his house several times in succession, causing him to tell her that he would either block
the line or report her. 

 Brooke Geiger, Terry's sixth-grade daughter, testified that when Terry and
appellant started arguing, she left the house. She went outside to do her homework, then rode her
bike around the block because she could not concentrate. When she got home, the police were
there. Terry was crying and bleeding from her face. Terry told her that appellant had hit her. 
Brooke testified that appellant looked angry.

 Arthur, appellant's son, said he was in the back yard hitting pecans with an inch-thick wooden dowel when a telephone call came from 911. He answered it, spoke to the 911
officer, then went back outside. Despite hearing Terry yelling, he went about his business because
it was nothing new. Eventually, he walked back into the house and saw Terry and appellant come
out of the bathroom. She had a scratch on her face, but Arthur did not see her get scratched. 
Terry was yelling, and appellant was trying to wipe blood off her face. Appellant started to yell
at her, Terry threw the towel in his face, and appellant grabbed her around the throat with one
hand and backed her up two or three steps. Appellant released her, went to his room to dress,
then went out on to the porch. Terry yelled at Arthur for a while, so Arthur joined appellant on
the porch. Terry called 911 again.

 Appellant made a bill of exceptions by calling Mental Health Mental Retardation
service coordinator Fred Smith. Smith testified that he had worked with Terry at her request since
the month after the February 1999 assault. He said Terry was hospitalized with over-medication
problems and suicidal ideation in July 1999. He said she was diagnosed with major depression
(which included overwhelming sadness, hopelessness, inability to experience pleasure, and low
self-esteem) and a borderline personality disorder (which included identity confusion, extreme
moodiness, impulsivity, and a tendency to push and pull simultaneously in relationships).

 An information was filed against appellant on April 14, 1999. The culpability
phase of the trial occurred on January 27-28, 2000.

 

DISCUSSION


 In his first issue, appellant contends that the county court violated his right to
confront witnesses by refusing to allow him to introduce evidence of Terry's mental health. He
complained at trial that the evidence of her hospitalization subsequent to the assault was relevant
to her credibility, her state of mind at the time of the assault, and her state of mind in November
1999 when she gave a written statement. 

 The court of criminal appeals has called the right to cross-examine witnesses "one
of the greatest constitutional rights that an accused person might have." Virts v. State, 739 S.W.2d
25, 29 (Tex. Crim. App. 1987). It includes the right to ask about mental illness or disturbance
that "might tend to reflect on the witness's credibility." Id. The right to cross-examine has limits,
however; the trial judge "retains wide latitude to impose reasonable limits on cross-examination
based upon concerns about, among other things, harassment, prejudice, confusion of issues, and
the witness's safety." Id. at 28. Because the definition of "mental illness" includes conditions
ranging from nervousness through thoroughly debilitating psychoses, the court wrote, 

 

 the mere fact that the State's testifying witness has in the recent past suffered or
received treatment for a mental illness or disturbance does not, for this reason
alone, cause this kind of evidence to become admissible impeachment evidence. 
If the witness is shown to have been suffering from a recent mental illness, prior
to the occurrence of the event in question, and such might be considered a
"persistent disabling disturbance of his mental and/or emotional equilibrium,
manifested through persistent maladjustment and more or less irrational, even
bizarre behavior and speech," Brussel and Cantzlar, [The Layman's Dictionary of
Psychiatry (1967 edition)], whether psychic or organic in origin, then, of course,
the trial judge should permit the jury to hear this kind of evidence. 


Id. at 30. The court held that the decision of whether the mental illness is admissible evidence is
necessarily ad hoc, and that appellate courts must give great deference to the trial court's decision 
on admissibility. Id. at 28. We reverse only for an abuse of discretion. Ramos v. State, 819
S.W.2d 939, 941 (Tex. App.--Corpus Christi 1991, pet. ref'd); see also Miller v. State, No. 1939-99, slip op. at 7 (Tex. Crim. App., Jan. 17, 2001) (in crack delivery case, reviewing exclusion
of defense's evidence, offered to show coercion to deliver, of assault by dealer after delivery).

 The evidence excluded did not show Terry suffered mental illness before or during
the incident. Evidence of mental disturbance does not, without more, prove earlier mental
disturbance; a spousal assault in February might very well provoke depression in March. The
evidence offered regarding Terry's mental condition at the time of the assault--that regarding her
use of Soma and Lortab and their side effects--was admitted. Without evidence of a link between
the subsequent hospitalizations and her condition at the time of the incident, the county court did
not err by excluding the evidence of Terry's mental condition after the incident.

 Nor does the proximity of treatments to the November 1999 written statement
require reversal. The November statement does not differ from her primary testimony on material
aspects of the incident--the argument, the altercation in the shower, and appellant scratching her
face and choking her. Where the statement differs from her testimony, it casts appellant and his
son in a less favorable light; in the statement, she said appellant was "again" drunk and high,
implied that he was nude in front of her children, and that Arthur came after her with a bat. The
State did not use the statement in prosecution; appellant was arrested and the information was filed
months before it was written, and the State did not use it at trial. Appellant offered it after the
court had excluded evidence of Terry's mental health treatments. If appellant's purpose was to
show Terry's story had varied, this purpose was served without evidence of Terry's intervening
mental treatments; appellant cross-examined Terry and not only showed these inconsistencies but
got her to recant or justify them. If the purpose was to show that this embellished version was the
product of mental instability, the court did not err by blocking that purpose; that mental illness
perhaps caused Terry to exaggerate after the incident and the information but before trial has no
bearing on either the incident, the prosecution, or her competence to testify at trial.

 Appellant did not expressly challenge Terry's competence to testify at trial, nor did
the offered testimony address her condition at trial. 

 The court allowed appellant to cross-examine Terry and show inconsistencies in her
November statement, but prevented him from presenting evidence of her mental illness between
the incident and trial which was not shown to bear upon her condition at the time of the incident
or at trial. We find no error and resolve issue one against appellant.

 In his second issue, appellant challenges the factual sufficiency of the evidence. 
The court of criminal appeals has reiterated the standard of review for such challenges:


 [T]he Courts of Appeals are constitutionally empowered to review the judgment of
the trial court to determine the factual sufficiency of the evidence used to establish
the elements of an offense. Cain v. State, 958 S.W.2d at 408; Clewis v. State, 922
S.W.2d at 129-30. In determining the factual sufficiency of the elements of the
offense, the reviewing court "views all the evidence without the prism of 'in the
light most favorable to the prosecution,' [i.e., views the evidence in a neutral
light,] and sets aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust." Clewis v. State, 922
S.W.2d at 129. The court reviews the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compares it with the
evidence that tends to disprove that fact. Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d
54 (1997). "In conducting its factual sufficiency review, an appellate court reviews
the fact finder's weighing of the evidence and is authorized to disagree with the fact
finder's determination." Clewis v. State, 922 S.W.2d at 133. This review,
however, must employ appropriate deference to prevent an appellate court from
substituting its judgment for that of the fact finder, and any evaluation should not
substantially intrude upon the fact finder's role as the sole judge of the weight and
credibility given to witness testimony. Jones v. State, 944 S.W.2d at 648.


* * *



 Unless the available record clearly reveals a different result is appropriate, an
appellate court must defer to the jury's determination concerning what weight to
give contradictory testimonial evidence because resolution often turns on an
evaluation of credibility and demeanor, and those jurors were in attendance when
the testimony was delivered. This evidence is then accorded the appropriate
consideration by the reviewing court in the context of its overall analysis of the
relevant evidence. 

 

Johnson v. State, 23 S.W.3d 1, 6-9 (Tex. Crim. App. 2000).

 The record supports the conviction. The inconsistencies in Terry's statement and
testimony were in the record, as was her refusal to positively identify the shower curtain rod in
evidence.(2) The record contains appellant's testimony and his son's supportive testimony, as well
as the small inconsistencies between Arthur's version of where and to which police officer he
spoke. Also in evidence were the shower curtain rod and the photographs of Terry. The jury
convicted appellant on this record. We cannot conclude that the record "clearly reveals a different
result is appropriate." We therefore must resolve issue two against appellant.


CONCLUSION


 Having resolved both issues against appellant, we affirm the conviction and
sentence.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel, and Jones*

Affirmed

Filed: February 8, 2001

Do Not Publish





* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. Terry Pierce identified appellant as her ex-husband at trial. To avoid confusion about which
Pierce we mean, we will refer to Gregori Pierce as appellant and Terry Pierce as Terry.
2. She recognized it as a broken shower curtain rod like the one from the incident, but refused
to definitively declare it to be the same rod.


ent, the prosecution, or her competence to testify at trial.

 Appellant did not expressly challenge Terry's competence to testify at trial, nor did
the offered testimony address her condition at trial. 

 The court allowed appellant to cross-examine Terry and show inconsistencies in her
November statement, but prevented him from presenting evidence of her mental illness between
the incident and trial which was not shown to bear upon her condition at the time of the incident
or at trial. We find no error and resolve issue one against appellant.

 In his second issue, appellant challenges the factual sufficiency of the evidence. 
The court of criminal appeals has reiterated the standard of review for such challenges:


 [T]he Courts of Appeals are constitutionally empowered to review the judgment of
the trial court to determine the factual sufficiency of the evidence used to establish
the elements of an offense. Cain v. State, 958 S.W.2d at 408; Clewis v. State, 922
S.W.2d at 129-30. In determining the factual sufficiency of the elements of the
offense, the reviewing court "views all the evidence without the prism of 'in the
light most favorable to the prosecution,' [i.e., views the evidence in a neutral
light,] and sets aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust." Clewis v. State, 922
S.W.2d at 129. The court reviews the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compares it with the
evidence that tends to disprove that fact. Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d
54 (1997). "In conducting its factual sufficiency review, an appellate court reviews
the fact finder's weighing of the evidence and is authorized to disagree with the fact
finder's determination." Clewis v. State, 922 S.W.2d at 133. This review,
however, must employ appropriate deference to prevent an appellate court from
substituting its judgment for that of the fact finder, and any evaluation should not
substantially intrude upon the fact finder's role as the sole judge of the weight and
credibility given to witness testimony. Jones v. State, 944 S.W.2d at 648.


* * *



 Unless the available record clearly reveals a different result is appropriate, an
appellate court must defer to the jury's determination concerning what weight to
give contradictory testimonial evidence because resolution often turns on an
evaluation of credibility and demeanor, and those jurors were in attendance when
the testimony was delivered. This evidence is then accorded the appropriate
consideration by the reviewing court in the context of its overall analysis of the
relevant evidence. 

 

Johnson v. State, 23 S.W.3d 1, 6-9 (Tex. Crim. App. 2000).

 The record supports the conviction. The inconsistencies in Terry's statement and
testimony were in the record, as was her refusal to positively identify the shower curtain rod in
evidence.(2) The record contains appellant's testimony and his son's supportive testimony, as well
as the small inconsistencies between Arthur's version of where and to which police officer he
spoke. Also in evidence were the shower curtain rod and the photographs of Terry. The jury
convicted appellant on this record. We cannot conclude that the record "clearly reveals a different
result is appropriate." We therefore must resolve issue two against appellant.


CONCLUSION


 Having resolved both issues against appellant, we affirm the conviction and
sentence.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel, and Jones*

Affirmed

Filed: February 8, 2001

Do Not Publish





* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(