11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Demond Keith Nunn

Appellant

Vs.                   No.  11-02-00023-CR C Appeal from Harris County

State of Texas

Appellee

 

The jury
convicted appellant of burglary of a habitation with the intent to commit
assault and assessed his punishment at confinement for 10 years and a $10,000
fine. Upon the jury=s
recommendation,  the trial court
suspended the imposition of the confinement portion of the sentence and placed
appellant on community supervision for 10 years.  We affirm.








In two
points of error, appellant contends that the evidence is legally and factually
insufficient to support his conviction. 
In order to determine if the evidence is legally sufficient, we must
review all of the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Jackson v. State, 17
S.W.3d 664 (Tex.Cr.App.2000).   In order
to determine if the evidence is factually sufficient, we must review all of the
evidence in a neutral light and determine whether the evidence supporting guilt
is so weak as to render the conviction clearly wrong and manifestly unjust or
whether the evidence supporting guilt, although adequate when taken alone, is
so greatly outweighed by the overwhelming weight of contrary evidence as to
render the conviction clearly wrong and manifestly unjust.  Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283 (Tex.Cr.App.2001); Cain v.
State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State 922 S.W.2d 126
(Tex.Cr.App.1996).  We review the fact
finder=s weighing of the evidence and cannot
substitute our judgment for that of the fact finder.  Cain v. State, supra; Clewis v. State, supra.  Due deference must be given to the jury=s determination, particularly concerning the
weight and credibility of the evidence. 
Johnson v. State, 23 S.W.3d 1 (Tex.Cr.App.2000); Jones v. State, 944
S.W.2d 642 (Tex.Cr.App.1996), cert. den=d, 522 U.S. 832 (1997).  This
court has the authority to disagree with the fact finder=s determination Aonly when the record clearly indicates such a
step is necessary to arrest the occurrence of a manifest injustice.@ 
Johnson v. State, supra at 9.

Diane
Mitchell Shine testified that her daughter, Troyveka Lachelle Shine, was
appellant=s girlfriend.  Diane stated that appellant and Troyveka had lived together at
one time; however, shortly before January 3, 2001, Troyveka had returned to
Diane=s home to live.   Sometime around 3:00 p.m. on that day, Diane was at work when
she received a call from Troyveka who was Ahysterical.@  Troyveka told Diane that appellant had come
to the house, forced his way into the house, and jumped on Troyveka.  Troyveka then screamed and dropped the
phone.  A few minutes later, Troyveka
got back on the phone and again said that appellant had forced his way into the
house when Troyveka had opened the door for her son to come inside.  Troyveka told Diane that appellant had
pushed her head through the wall.  The
phone was then hung up, and Diane called her husband and told him to go to the house.

Diane left
work and went to her house.  Diane
testified that, when she arrived at her house, her husband, Troyveka, Troyveka=s two children, and the police were
there.  Diane said that Troyveka was
still upset and shaking.  Diane heard
Troyveka tell the police that appellant had forced his way into the house and
jumped on her.  Diane testified that
there were things knocked over in the house, that the curtains were torn down,
and that there was a big hole in the wall in the hallway.  Diane further testified that Troyveka had
bruises on her and Apatches
of hair pulled out of her head.@  Deputy Michael Thomas with the Harris County Sheriff=s Office testified that on January 3, 2001,
he responded to a call from dispatch regarding a family disturbance.  When he arrived, Troyveka and her
six-year-old son were at the house. 
Deputy Thomas stated that Troyveka appeared to have been assaulted
because she had scratches on her, her face was swelling, and she had hair pulled
out of her head.  Troyveka was crying
and said that she was in a lot of pain. 
Troyveka told Deputy Thomas that appellant had called her and told her
he was coming over to get some of his belongings.  Troyveka said that she was afraid of appellant and that she
locked all of the doors and windows. 
Appellant arrived shortly after the phone call and began to beat on the
door, but Troyveka did not let him in. 
Troyveka saw appellant drive away.








Deputy
Thomas testified that Troyveka told him that a few minutes later her son
arrived home from school.  Troyveka
opened the door to let her son in the house, and appellant pushed her son
inside the door and followed behind him. 
Troyveka called 911, but she dropped the phone as she struggled with
appellant. Troyveka told Deputy Thomas that appellant assaulted her and pulled
out her hair.  Appellant pulled her into
the hallway and beat her head against the wall.  Deputy Thomas said that there were two holes in the sheet rock in
the hallway. 

Troyveka
told Deputy Thomas that the 911 operator called back to the house and that
appellant answered the phone and handed it to her.  When Troyveka started to speak to the operator, appellant began
hitting her in the face.  Troyveka told
Deputy Thomas that appellant then ran into the living room, pulled down the
curtains, and left.  Deputy Thomas
testified that Troyveka insisted to him several times that she wanted to press
charges against appellant. 

Troyveka
testified at trial and denied that appellant entered the house without consent.
Troyveka stated that, the first time that appellant came to the house, she did
not let him in.  Appellant returned
about 30 or 45 minutes later when Troyveka=s son got home from school. 
Troyveka said that she and appellant stood on the porch and talked and
that then they got into a Aheated@ discussion. 
Troyveka called 911, but then hung up the phone.  Appellant had come to get some of his Apapers@ so the two went into the house together.  Troyveka testified that appellant did not force his way into the
house and that he entered with her consent. 

Troyveka
testified that she threw appellant=s binder at him and that she also threw some silverware at him.  She said that the two started fighting and
that she slapped appellant.  Troyveka
stated that the 911 operator called back while they were in the hallway and
that appellant left.  Troyveka testified
that appellant did not hit her head against the wall.  Troyveka further testified that, when she gave her statement, she
Amixed it up@ and that she never indicated to the police that she wished to press
charges against appellant. 








Appellant
argues that the evidence is legally and factually insufficient to show that he
committed burglary with the intent to commit assault because Troyveka=s testimony establishes that he entered the
home with her consent and that she did not believe appellant  intended to assault her. The State presented
evidence that Troyveka told both her mother and the police that appellant
forced his way into the house and assaulted her.  Although Troyveka testified at trial that she lied to her mother
and the police, the jury is the sole judge of the credibility of the witnesses
and the weight to be given their testimony, 
and it is also the exclusive province of the jury to reconcile conflicts
in the evidence.  TEX. CODE CRIM. PRO.
ANN. arts. 36.13 & 38.04 (Vernon 1979 & 1981);  Wesbrook v. State, 29 S.W.3d 103
(Tex.Cr.App.2000), cert. den=d, 532 U.S. 944 (2001).  After
reviewing all of the evidence in the light most favorable to the verdict, we
conclude that a rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. 
After reviewing all of the evidence in a neutral light favoring neither
party, we hold that the jury=s verdict is not so against the great weight of the evidence as to be
clearly wrong and unjust.  Appellant=s two points of error are overruled.

The
judgment of the trial court is affirmed.

 

TERRY
McCALL

JUSTICE

 

January 16, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.