Opinion issued April 24, 2003.


     













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00856-CR




DON RICHARD BROWN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 917205




MEMORANDUM OPINION
          Appellant, Don Richard Brown, was charged by indictment with the felony
offense of aggravated robbery. A jury found appellant guilty of the lesser included
offense of robbery, and the trial court assessed punishment at 45 years’ confinement. 
In a single point of error, appellant challenges the factual sufficiency of the evidence
supporting his conviction.
Background
          Appellant and his co-defendant, Michael Jones, were tried in a joint trial for the
robbery of the Tran family home. Two Tran family members, Tina Le and her
15-year-old daughter Elizabeth Tran, testified at trial. Before trial, appellant filed a
motion to suppress the out-of-court identifications of appellant made by Tran and Le,
asking the court to suppress the identifications until it held a hearing on whether the
identifications were impermissibly suggestive or whether appellant’s rights had been
violated during the identification process. In pre-trial proceedings, the trial court
stated that the motion was to be taken with the case, and appellant’s counsel did not
object.
          At trial, Elizabeth Tran testified that she, her younger brother, and her mother
were making dinner at approximately 10:00 p.m. Tran stated that they were in the
kitchen when they heard a loud noise from the front of the house. Tran went into the
living room to investigate, and she encountered a stranger coming into the home
through the front door. At trial, Tran stated that the man she had seen was (1)
approximately 40-50 years old, (2) wearing a grey short-sleeved T-shirt with an
American flag logo on it and blue jeans, and (3) holding a rifle. The man told Tran
that he was “robbing the house.” Tran ran back through the kitchen and fled through
the kitchen door into the family’s garage to hide. Tran’s younger brother had also
fled into the garage to hide. The man followed Tran into the kitchen, where Le had
remained after her children had fled to the garage. The man pointed a gun at Le’s
head and pushed her down to the kitchen floor. At trial, Le described the man as
“kind of skinny.” Le stated that the man also had a little mustache and that he wore
a grey T-shirt with an American flag on it. Le could not remember what type of pants
the man was wearing, only that they were long pants. The man ordered Le to close
her eyes, and then started towards the garage after her daughter.
          From her hiding place inside the garage, Tran heard the man telling her mother
not to call the police. The man then came into the garage and found Tran. He put the
gun he was holding to Tran’s neck and told her to lie down on the floor. The man
next put the gun to Tran’s mouth and asked her where the family’s money was. Tran
told him they did not have any. The man left the garage and went back into the
kitchen to demand Le give him whatever money and jewelry were in the home. Le
agreed to give him whatever money she had and led him into her bedroom. On the
way into her bedroom, Le saw a second man coming out of her bedroom with his
hands full of the family’s belongings. Le stated that this second robber was taller
than the first, and that he appeared to be stronger. Le also stated that this second
robber wore a red shirt and blue jeans. 
          In Le’s bedroom, the first robber pushed Le down and tore her blouse open. 
He pinched her nipple, telling her that he would kill her. Le stated that the robber
then showed her a tattoo on his arm and again stated that if she called the police, he
would come back to kill her and her family. At some point during the exchange, the
man noticed jewelry Le wore and demanded that she take it off. Le took off her
jewelry and gave it to the robber. Le testified that the robber put the jewelry she gave
him into his pocket.
          While Le and the first robber were in Le’s bedroom, the second robber entered
the family garage and attempted to hot-wire the family van. He was unable to start
the van, so he instead told Tran, who was still in the garage, to get up and go into her
mother’s bedroom. When Tran entered her mother’s room, she saw her mother was
sitting on the bed with her shirt torn open, visibly upset. Tran saw the first man show
her mother his tattoo. Tran also testified that the first man was telling her mother that
he “was an American.” The second robber, who had followed Tran into her mother’s
bedroom, at that point asked the first robber where the “money and gold” were. The
first robber pointed to his pants pocket. The second robber then asked Le where the
keys to the family van were, and Le told him that they were in the kitchen. The first
robber put the gun to Le’s head, and both men escorted Le into the kitchen to find the
van keys. Le gave the van keys to the first robber and, following their demands,
opened the garage door so that they could drive away. The first robber gave the keys
to the second robber, and they drove away in the van with the first robber as the
passenger and the second robber as the driver. Le ran back into her house and called
the police, who arrived 10 minutes later. 
          Approximately 20 minutes after the police arrived at Le’s home, officers told
her that the men who had stolen her van had been arrested. Le and Tran were taken
in a police car to the location where the men had been apprehended. Le stated that,
as they approached in the police car, she saw the van had been damaged and two men
in handcuffs. Le testified that she saw the first robber, no longer wearing the grey
American flag T-shirt, in handcuffs, and that the second robber was in the ambulance. 
Police officers asked Le to look carefully and to confirm whether the men she saw
were the ones who had robbed the Tran house. Le confirmed that they were. Le also
stated that, although it was nighttime, the scene and the suspects were illuminated by
the lights of patrol cars as well as light from the open doors of the ambulance. 
          Tran testified that, when she arrived at the scene, she saw the first robber, bare-chested and wearing blue jeans, in a police car, and she saw the second robber in an
ambulance. From her view in the police car, Tran positively identified the men as the
robbers.
          In court, Tran identified appellant as the first robber. After she identified
appellant, Tran admitted that she was more familiar with the first robber, and she
estimated that she was in his presence for at least 2 minutes. She also stated she was
confident of her in-court identification of him. Le, however, was unable to identify
appellant as the first robber in court. When asked during her testimony if she could
identify the first robber, Le stated that she did not remember what he had looked like,
and she was unable to point him out in the courtroom. 
          The State also presented the testimony of one of the police officers involved
in apprehending appellant, Officer K.M. Smith of the Houston Police Department. 
Officer Smith testified that, on the evening of the robbery, he saw a van matching the
description of the stolen Tran family van. Officer Smith followed the van, which
drove normally until it made a turn on a dead-end street, where it stopped. Officer
Smith stopped behind the van and turned on his spotlight. Officer Smith got out of
his police car and approached the van on the driver’s side. The van then suddenly
reversed towards Smith’s car, went around the police car, and sped away. Officer
Smith got back into the police car and pursued the van. While the van was attempting
to evade the police, Officer Smith was able to see that the van’s driver-side door
remained partially open, but he was unable to see whether anything was being thrown
out. After approximately two miles, the van crashed into a freeway embankment. As
the van hit the embankment, first the driver, then the passenger, left the van. The
driver and the passenger ran away from the van in different directions. Officer Smith
pursued the passenger while another police officer chased down the driver. Officer
Smith successfully chased down the fleeing passenger and returned him to his police
car. Upon apprehending appellant, Smith searched him, but found only a single bill. 
Smith testified that appellant was wearing jogging pants at the time he was
apprehended. Officer Smith handcuffed the passenger and then placed him in the
back of Smith’s police car. A search of the van revealed a pellet gun, a few torn
Christmas packages, several new items of children’s clothing with the tags torn off,
and cans of beer, some of which had been emptied. At trial, Smith identified
appellant as the passenger in the van. When questioned at trial, Smith could not
remember whether or not appellant’s pants had pockets. 
          At trial, appellant’s co-defendant’s counsel cross-examined Tran on the
description of the robbers that she had given to the police. During cross, appellant’s
co-defendant’s counsel pointed out to Tran that his client had a large tattoo on his
face, which she had not mentioned in her description of the robbers. When asked
about appellant’s co-defendant’s facial tattoo, Tran admitted that her range of vision
was limited and that she could not see the tattoo from the witness stand. The trial
court granted permission for appellant’s co-defendant to approach the witness stand
and remain at an undisclosed distance from Tran. Even at a presumably closer
distance, Tran again could not see the tattoo. Tran admitted that she wears glasses,
and that she was not wearing glasses or contacts during her trial testimony.


 
Analysis
          When reviewing a challenge to the factual sufficiency of the evidence, we ask
“whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.” Johnson v. State, 23 S.W.3d 1,11 (Tex. Crim.
App. 2000). In our factual-sufficiency review, we review all the evidence admitted,
whether proper or improper. Young v. State, 976 S.W.2d 771, 773 (Tex.
App.—Houston [1st Dist.] 1998, pet. ref’d). 
          At the outset, we note the narrow scope of the issue appellant has presented for
our review. Appellant’s sole point of error challenges his conviction by arguing that
the evidence was factually insufficient to establish that he was one of the men who
committed the robbery. Specifically, appellant complains that the identification
procedures used by the police were impermissibly suggestive and that Tran’s and Le’s
subsequent out-of-court and in-court identifications of appellant as one of the men
who committed the robbery were therefore tainted by a substantial likelihood of
misidentification. However, during trial, appellant did not reintroduce his pretrial
motion urging the suppression of Tran’s and Le’s in-court identifications of him as
one of the men who robbed their home, nor did appellant object when Tran identified
him in court as the first robber. Appellant has accordingly waived the issue of
whether the identification procedures used by police were impermissibly suggestive
or whether Tran’s in-court identification of him was tainted by the out-of-court
procedures. Tex. R. App. P. 33.1. Accordingly, the only issue before us is whether,
when viewed in a neutral light, the sum of the evidence presented to the jury is
sufficient to support appellant’s conviction.
          On appeal, appellant argues that the evidence showed that, at the time he was
apprehended by police, he was not dressed as Le and Tran testified the first robber
was dressed. Tran and Le both admitted at trial that appellant was not wearing the
grey American flag T-shirt when they saw him in the police car, nor could Officer
Smith remember whether appellant had been wearing pants with pockets. 
Additionally, appellant points to the fact that no money or jewelry was found on his
person or in the van at the time he was apprehended. Appellant argues that, in light
of (a) the short time period between the robbery and his apprehension by police and
(b) the fact that his co-defendant was wearing the same outfit Tran and Le described
the second robber wearing, it is unlikely that appellant would have had time to both
change his clothes and dispose of the stolen property after the robbery. Instead,
appellant contends that it is more likely that the first robber, along with the bulk of
the stolen property, was dropped off by Michael Jones after the robbery and that
appellant somehow ended up in the van shortly thereafter. Additionally, appellant
asserts that Tran’s in-court identification of him as the first robber was unreliable
evidence because improper police procedures tainted her out-of-court identification
on the night of the robbery and her in-court identification was nullified by evidence
of her poor vision. 
          Essentially, appellant is attempting to assert on appeal an alternative theory of
the case and to argue that his version of events is more plausible than the one
presented by the State at trial. Conflicts in the testimony are for the jury to resolve
for themselves, and we must defer to the jury’s determinations regarding the weight
and credibility of the evidence. Johnson, 23 S.W.3d at 8.
          Uncontroverted evidence showed that appellant was riding as a passenger in
the stolen Tran van shortly after the robbery, and that he attempted to evade Officer
Smith after leaving the van. In addition, when he was apprehended by police,
appellant was positively identified by both Tran and Le as the first robber. Both Tran
and Le stated that, during the robbery, they interacted with appellant for several
minutes at extremely close range and both of their out-of-court identifications of
appellant were aided by the bright lights of police and emergency response vehicles. 
Further, Tran stated at trial that she was positive of her in-court identification of
appellant as the first robber. The jury heard and saw evidence of Tran’s apparently
limited vision and they were thus able to evaluate her range of sight and her
credibility as an identification witness. See Jones v. State, 944 S.W.2d 642, 647-49
(Tex. Crim. App. 1996) (stating that the jury is the exclusive judge of witness
credibility and the weight to give testimony). Appellant’s attempt to discredit the in-court and out-of-court eyewitness identifications provided by Tran and Le does not
explain either his presence in the stolen van or his subsequent attempt to evade police. 
Finally, appellant’s contention that there was no time between the robbery and his
apprehension for him to change his clothes is contradicted by the contents of the van
upon recovery. Tran and Le stated that the van was empty when it was in the family’s
garage, but when the van was recovered it contained several cans of beer in addition
to some of the family’s stolen Christmas presents. The evidence indicates there was
sufficient time for appellant and his co-defendant to obtain and consume several cans
of beer from an unknown source and to dispose of the rest of the stolen Tran family
property before encountering Officer Smith. 
          We cannot say that the evidence presented of appellant’s guilt was so obviously
weak as to undermine our confidence in the jury’s determination, or that the proof of
appellant’s guilt, although adequate if taken alone, is greatly outweighed by contrary
proof. Johnson, 23, S.W.3d at 11. Accordingly, we overrule appellant’s sole point
of error. 
Conclusion
          We affirm the judgment of the trial court.




                                                             George C. Hanks, Jr.
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).