MEMORANDUM OPINION




No. 04-02-00792-CR



Cathy MARTINEZ,


Appellant



v.



The STATE of Texas,

Appellee



From the 290th Judicial District Court, Bexar County, Texas


Trial Court No. 2001-CR-6936


Honorable Sharon MacRae, Judge Presiding



Opinion by: Phylis J. Speedlin, Justice


Sitting: Alma L. López, Chief Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: February 4, 2004


AFFIRMED

 A jury found Cathy Martinez ("Martinez") guilty of theft by a public servant. Punishment was
assessed at ten years confinement, probated for ten years. In her sole point of error, Martinez asserts
there is factually insufficient evidence to support the verdict. We affirm.


Background

 Martinez was employed as a secretary at Japhet Elementary School ("Japhet Elementary").
In addition to her regular duties, she was also in charge of writing checks to various vendors for
supplies and coordinating the student activities budget. After an internal audit, the activities and
supply budget appeared to contain discrepancies. Upon further examination, certain checks were
found to be payable to Martinez, members of her family, and fictitious companies that were connected
to either her or her family.

Sufficiency Of The Evidence

 In her sole issue on appeal, Martinez asserts the evidence is factually insufficient to support
her conviction for theft by a public servant of $1,500.00 or more but less than $20,000.00. See Tex.
Penal Code § 31.03(e)(4),(f)(1) (Vernon 2003). In a factual sufficiency challenge, we review all of
the evidence in a neutral light and reverse only if the evidence is clearly wrong and manifestly unjust
or if the adverse finding is against the great weight and preponderance of the evidence. See Sims v.
State, 99 S.W.3d 600, 601 (Tex Crim. App. 2003); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).

 A person commits the offense of theft if she unlawfully appropriates property with the intent
to deprive the owner of its use. See Tex. Penal Code § 31.03(a). "Appropriation" of property is
unlawful if it is without the owner's effective consent. See Tex. Penal Code § 31.03(b)(1).
"Effective consent" is defined as consent by a person legally authorized to act for the owner and not
induced by deception or coercion. See Tex. Penal Code § 31.01(3)(A) (Vernon 2003). To
"deprive" an owner of property means to withhold property from the owner permanently or for such
an extended period that a major portion of the value or enjoyment of the property is lost. See Tex.
Penal Code § 31.01(2)(A). Finally, a public servant is a person elected, selected, appointed,
employed or otherwise designated as an officer, employee, or agent of the government. See Tex.
Penal Code § 1.07(a)(41) (Vernon 2003).

 In asserting that the evidence was factually insufficient, Martinez denies that she committed
theft, and asserts that all of the checks made out to her were for reimbursement of purchases she
made on behalf of the school. She testified that while she was unable to account for every purchase
made, she never misappropriated the school's money for personal gain. Martinez further explained
that items immediately needed by the school would justify going to an outside vendor not approved
from the district's bid list. Martinez does not deny that she wrote checks to herself and other family
members using fictitious companies, but argues she did this to circumvent the formal reimbursement
process because it was time consuming and inefficient. Martinez further justifies her actions by
claiming that she had an extremely close relationship with Pamela Malefyt ("Malefyt"), the principal
of Japhet Elementary, and that Malefyt was happy with her level of efficiency. Moreover, Malefyt
did not question how or where Martinez obtained certain supplies for the school. 

 Ralph Ross ("Ross"), the head custodian at Japhet Elementary, testified on behalf of Martinez.
He stated that when he was short on supplies, Martinez always helped him obtain them faster than
if he had followed the standard procedures for requesting supplies. Ross testified that Martinez was
efficient in assisting him and that she was a real "team player". 

 Debra Dimitroff ("Dimitroff") was a teacher and facilitator for an after-school program at
Japhet Elementary. Dimitroff testified that when she needed classroom materials, Martinez was
always quick to provide them for her. She further testified that teachers were reimbursed for certain
purchases, but that there was a specific procedure for doing so which involved filling out forms and
documenting the purchase with a receipt. 

 Maria Rosales ("Rosales") was the data entry clerk at the time Martinez worked at Japhet
Elementary and testified that the school was always in need of supplies. Rosales testified that one
of Martinez's duties was cashing checks made out to the school, but that Martinez was not
responsible for making purchases. Rosales testified that it was another person, the community liaison,
who purchased specific items for the school using a Japhet Elementary credit card. 

 Malefyt was appointed principal of Japhet Elementary in 1992, and served until Linda Frith
("Frith") eventually replaced her. Malefyt stated that she had a close relationship with Martinez and
would sign invoices without question because she trusted Martinez. She also explained that Martinez
was in charge of paying various vendors for school-related items and Martinez had access to a
signature stamp that bore Malefyt's name. Malefyt, however, stated that Martinez was not allowed
to sign on her behalf or use the stamp for checks. When questioned about her name appearing on
various checks that were made out to Martinez, Malefyt testified that Martinez always approached
her on her way out or waited until she was going out of town to ask Malefyt to pre-sign checks so
that purchases could be made for the school in her absence. 

 Malefyt also admitted to using poor judgment in regards to one specific transaction involving
school funds. Malefyt testified that the school needed a new washer and dryer and that she wanted
to sell her own washer and dryer to the school. According to Malefyt, Martinez suggested they use
Martinez's son as the seller and make the school check out to him to avoid the appearance of
impropriety. Malefyt specifically denied that any other checks made payable to Martinez or her
family members were authorized by Malefyt or the school district. 

 Additionally, Malefyt confirmed that reimbursements for supplies were common for teachers
at Japhet Elementary when they spent their own money and submitted a receipt. But when asked if
it was common for Martinez to be reimbursed for supplies she bought for the school, Malefyt stated
that she could not recall an instance where Martinez purchased something for the school on her own.
Martinez was not authorized to deposit any checks into her personal account. 

 Frith stated that when she replaced Malefyt as principal, she became suspicious of Martinez
when she discovered discrepancies in an audit report involving the school's budget. In reviewing
the itemized transactions, Frith testified that she specifically questioned Martinez about two missing
checks from a vendor for approximately $1,800.00. Frith stated that Martinez lied when she said the
checks were returned to the vendor because of a clerical error. She further testified that only after
a police investigation into the whereabouts of the checks did Martinez admit that she had lied and that
the missing checks were "mistakenly" deposited into Martinez's personal account. Frith did
acknowledge that Martinez paid the school back, but only after a complaint had been filed against her.
Martinez denied any knowledge of an investigation or that criminal charges had been filed against her
at the time she returned the money to Frith. Analysis

 Issues of witness credibility are within the jury's domain and we may not substitute our view
of witness credibility for the jury's determination. See Johnson, 23 S.W.3d at 8, 9. Due deference
must be accorded to the fact finder's determinations, particularly those determinations concerning the
weight and credibility of the evidence. See Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996).

 Although the testimony of Ross and Dimitroff suggests that Martinez accomplished her goal
of creating a more effective purchasing system for Japhet Elementary, the testimony of Rosales,
Malefyt, and Frith supports the jury's determination that Martinez had intentionally deprived the
school district of funds and misappropriated school funds for her own benefit. Even though the
record contains some evidence that Martinez had good intentions, the record contains ample evidence
that Martinez created fictitious companies and invoices in her favor and deposited school funds into
her personal account without authorization. There is also some evidence of other discrepancies
relating to Martinez's handling of school funds for field trips, catalog sales, and textbook accounts.
It is clear from the record that Martinez was a public servant of the school district, a government
agency. 

 It was within the province of the jury to conclude that Martinez did not have the effective
consent of the school district and possessed the requisite intent to deceive school officials when she
falsified invoices and set up fictitious companies connected to either her or her family. The jury was
also entitled to conclude that even though Martinez eventually returned the two missing checks to
Frith, she possessed the necessary intent to deprive Japhet Elementary of its funds when she deposited
them into her account.

 Unless the available record clearly reveals a different result is appropriate, we must defer to
the jury's determination concerning what weight to give contradictory testimonial evidence. See
Johnson, 23 S.W.3d at 8. In this case, the factual sufficiency of the evidence is dependent upon the 

witnesses' credibility and demeanor, and we decline to find that the verdict is clearly wrong and
manifestly unjust. See id. Accordingly, we find that the evidence was factually sufficient and affirm
the judgment of the trial court. 


 Phylis J. Speedlin, Justice


Do Not Publish