NUMBER 13-03-00655-CR

 

                                 COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

                                                                                                                       


TOMMY ALLEN THOMAS,                                                               Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

                                                                                                                       


                      On appeal from the Second 25th
District Court

                                        of
Lavaca County, Texas.

                                                             
                                                          

                               MEMORANDUM OPINION

 

      Before Chief Justice Valdez and Justices Hinojosa and
Rodriguez

                         Memorandum
Opinion by Justice Hinojosa

 








The trial court found appellant, Tommy Allen Thomas,
guilty of the offense of stalking.  After
he pleaded Atrue@ to an enhancement paragraph in the indictment, the
trial court assessed his punishment at sixteen years= imprisonment. 
The trial court has certified that this Ais not
a plea-bargain case, and [appellant] has the right of appeal.@  See Tex. R. App. P. 25.2(a)(2).  In a single issue, appellant contends the
evidence is factually insufficient to support his conviction.  We affirm.  


As this is a
memorandum opinion not designated for publication and because all issues of law
presented by this case are well settled and the parties are familiar with the
facts, we will not recite the law and the facts here except as necessary to
advise the parties of our decision and the basic reasons for it.  See Tex.
R. App. P. 47.4.

The standard of review for a challenge to the
factual sufficiency of the evidence is well settled.  See Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997).  A person commits the offense
of stalking if: 

[T]he person, on more than one occasion and pursuant
to the same scheme or course of conduct that is directed specifically at
another person, knowingly engages in conduct, including following the other
person, that: 

 

(1)       the actor knows or reasonably believes the other person will
regard as threatening:

 

(A)       bodily injury or death for the other person;

 

(B)       bodily injury or death for a member of the other person's
family or household; or

 

(C)       that an offense will be committed against the other person's
property;

 

(2)       causes the other person or a member of the other person's
family or household to be placed in fear of bodily injury or death or fear that
an offense will be committed against the other person's property; and

 

(3)       would cause a reasonable person to fear:

 

(A)       bodily injury or death for himself or herself;

 








(B)       bodily injury or death for a member of the person's family or
household; or

 

(C)       that an offense will be committed against the person's
property.

   

Tex. Pen. Code
Ann. '
42.072(a) (Vernon 2003).  Pursuant to the
indictment, the State was required to show (1) appellant knowingly engaged in
conduct directed specifically towards  Pamela Farmer, (2) that appellant knew or
reasonably believed Pamela would regard as threatening bodily injury, and (3)
such conduct would cause a reasonable person to fear, and did cause Pamela to
fear, bodily injury.   

Pamela and appellant
were married in 1978.  Pamela testified
that she asked for a divorce after three months of marriage because appellant
was Abeating on@ her.  Pamela
said that from shortly after the divorce until the time he was taken into
custody, appellant would go through periodic phases of trying to communicate
with her at her home or at her mother=s home. 
Appellant would drive past her house or Aconstantly
call . . . for at least a couple of weeks [and] then it would stop for a couple
of months, sometimes up to . . . six months, and then it=d start again.@  In December
2001, Pamela obtained an unlisted telephone number and caller ID because her
family had been receiving telephone calls in the middle of the night from pay
phones or with an anonymous ID.








Pamela also testified that while living in several
different cities, there were periods that she would see appellant all over
town.  In 1979, shortly after the
divorce, while living in El Campo, Pamela saw appellant at a convenience
store.  Appellant jumped into her pick-up
truck, started hitting her, broke off the mirror, and drove away in her
truck.  When she needed gasoline, Pamela
had to have police officers go with her because appellant would ride around
town looking for her, and when she would get out of the car, he would Acome flying up to@ her
and Agrab [her] by the throat.@          

While living in Yoakum, Pamela ran into appellant at
a Family Dollar store.  She saw him leave
the store, but shortly thereafter he reappeared beside her.  Appellant started yelling at Pamela to stay
away from him and leave him alone. 

In 1985, after the birth of Pamela=s first child, appellant called her parents= house and threatened to kill the baby.  In 1989, after the birth of her second child,
appellant visited Pamela at the hospital. 
He stood in the doorway to her room and did not speak.  Pamela told him to leave and then asked the
hospital to require visitors to check in at the nurse=s station before seeing her.  

Pamela often would be in a grocery or clothing store
and see appellant watching her, but he would not say anything.  She said that seeing appellant wherever she
went scared her.  Pamela testified she was
in fear of bodily injury whenever appellant would show up, and she Aalways knew one day he=d end
up killing@ her.

In April 2002, Pamela began receiving flowers from
appellant where she was attending school. 
She would see him sitting in his truck in the parking lot, watching
her.  After receiving flowers from
appellant on four separate occasions, Pamela asked the school office to stop
accepting flower deliveries for her.  In
addition, between January and April 2002, Pamela found notes from appellant on
her car, telling her that he wanted to see her and talk to her and asking her
to tell her mother that he was sorry.  








Pamela testified that she and her husband, Wayne
Farmer, have had to warn their children and other family members to be careful
if they ever saw appellant.  She said
appellant stopped contacting her only after he was put in jail.  Pamela considered appellant very threatening
because of his prior acts of violence towards her and her prior relationship
with him.  Pamela testified she was still
very afraid of appellant.  

Wayne Farmer testified that before he married
Pamela, appellant tried to run him off the road.  Throughout his marriage to Pamela, they have
had to change their telephone number several times.  Eventually they had to obtain an unlisted
number because of the frequent telephone calls from appellant.  Wayne testified that he has moved his family
several times to protect his wife and children, but appellant has always
managed to find where they are living. 
Wayne has had to warn his children to watch out for appellant and is in
fear that something might happen to his wife. 
Wayne said he knows of appellant=s actions only from what his wife has told him, he
did not answer the telephone, and appellant came around only when he was not at
home.  Wayne had not seen appellant
around his house or Pamela. 

During his testimony, appellant initially
acknowledged that he Abeat on@ Pamela when they were married, and that it was
wrong.  Later, however, he said he only
pushed her onto a bed.  Appellant
acknowledged making Asome@ telephone calls to Pamela and leaving a note on her
car.  He also admitted calling Pamela=s mother an Aold bitch@ and telling her AI hope
you die,@ but noted he later called to apologize.  Appellant denied hitting Pamela when he saw
her at the El Campo convenience store and said he only slapped her mirror.  Appellant said he did not drive all over town
looking for Pamela Avery often. 
Maybe once.@  He said he
bought flowers for Pamela because he wanted a friend to talk to and admitted
writing all the notes.  He denied always
following Pamela around and said he did not Aunderstand
why so many people [were] lying.@  He claimed
that Pamela had gotten a job at the nursing home because she knew he went there
on Wednesdays for Bible study.








Appellant also gave a written statement to police on
May 24, 2002.  In the statement,
appellant stated AI been watching her at the L.M.C. when she takes her
smoke breaks because I love her.  I=m sorry for harrassing [sic] her.@        

Although appellant disputes some of the testimony
against him and denies intending to cause fear, it is within the province of
the fact-finder to judge the weight and credibility to be accorded witness
testimony.  Johnson, 23 S.W.3d at
9 (citing Jones v. State, 944 S.W.2d 642, 648-49 (Tex. Crim. App.
1996)).  After reviewing all the evidence
in a neutral light, we conclude that it is not so weak as to be clearly wrong
and unjust, nor is the verdict against the great weight of the evidence.  Accordingly, we hold that the evidence is
factually sufficient to support appellant=s conviction for the offense of stalking.  Appellant=s sole
issue is overruled. 

The judgment of the trial court is affirmed.

 

 

FEDERICO G. HINOJOSA

Justice

 

 

Do
not publish.  See Tex. R. App. P. 47.2(b).

 

Memorandum
Opinion delivered and filed this

the
28th day of July, 2005.