**Opinion filed July 22, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00106-CR
_____

## ERNEST FRANCIS SCOTT, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 396th District Court**

**Tarrant County, Texas**

**Trial Court Cause No. 1126956D**

## MEMORANDUM OPINION

The jury convicted Ernest Francis Scott of aggravated robbery with a deadly weapon, found the enhancement allegation to be true, and assessed his punishment at confinement for fifteen years. We modify and affirm.

### Issues on Appeal

In two issues, appellant argues that the evidence is legally and factually insufficient to support the verdict. Specifically, appellant contends that there was no conclusive testimony that he committed the offense because the victim did not initially identify him, because the victim was unsure of the order in which the events occurred, and because the victim was intoxicated.

*Standards of Review*

In order to determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Laster*, 275 S.W.3d at 519; *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

The appellate court reviews the factfinder's weighing of the evidence and cannot substitute its judgment for that of the factfinder. *Cain*, 958 S.W.2d at 407; *Clewis*, 922 S.W.2d at 133. Due deference must be given to the factfinder's determination, particularly concerning the weight and credibility of the evidence. *Johnson*, 23 S.W.3d at 9; *Jones v. State*, 944 S.W.2d 642 (Tex. Crim. App. 1996). The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). This court has the authority to disagree with the factfinder's determination "only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Johnson*, 23 S.W.3d at 9.

*Evidence Presented*

Phillip Carlson testified that he worked at H & H Distributing making $40 - $50 a day. He had "ended up homeless for a short period of time" and was sleeping in a "little spot" on James Avenue. While he was sleeping on James Avenue, he met Cynthia Hardaway. She lived across the street from his spot and offered to let him sleep on her couch for $60 a week.

The first night he spent on Cynthia's couch, she asked for $20 and also asked him to watch her son for about twenty minutes. When she returned, she had some crack cocaine in her

2

hand. Carlson gave her the rest of the rent for the first week and put his things in the laundry room. He noticed that she had "some guy" in the bedroom. He also noticed her smoking crack.

Carlson stated that, while he stayed with Cynthia, she borrowed $40 from him in addition to the $60 he had given her for rent. Cynthia told him that she would take the $40 off his next week's rent. He stayed with her less than a week because they got into an argument when he refused to lend her any more money. Cynthia started throwing his clothes out her backdoor, and Carlson grabbed the rest of his things and went back across the street to his spot.

He spread out his bedroll and went to sleep. Later, he was awakened as two people walked across the grass toward him. Appellant "came at" him. Carlson testified, "He was already up on top of me by the time I sat up. He was already there. And I didn't even have a chance to stand up. . . . He was, boom, right there." Carlson described how appellant hit him twice in the head with a hammer. After the second blow, Carlson saw the hammer when appellant dropped his hand. Appellant then held Carlson down while Cynthia went through his pockets and removed $20.

Afterwards, Cynthia and appellant walked back across the street. Carlson went to find someone to call the police. He was taken to the hospital, and he received stitches.

Carlson testified that he had seen appellant three times before he was attacked: with a crack pipe in Cynthia's bedroom, in her kitchen when she introduced appellant as "Ernie," and in the house the night Cynthia kicked him out. Based on seeing appellant these times, Carlson identified appellant in open court as the man who hit him in the head with a hammer and held him down while Cynthia went through his pockets.

Carlson testified that he was an alcoholic but that he did not smoke crack. While he had been drinking the night Cynthia kicked him out, he said that he was "[n]ot completely drunk" when he went to sleep in his spot and that he was not at all intoxicated when he awoke as Cynthia and appellant approached him.

Carlson gave the police Cynthia's full name. He told the police that he only knew appellant as "Ernie." Carlson also told the police where they could find both Cynthia and appellant. Later, Carlson immediately picked Cynthia out of a photo lineup but did not immediately pick out appellant. He was "cautious" about identifying appellant. Carlson stated that he had viewed appellant directly head on and that appellant had his head at a bit of an angle in the photo.

Fort Worth Police Detective John Edward Livesay testified that Carlson was not under the influence of alcohol when he interviewed him at the hospital. Detective Livesay stated that Carlson immediately picked Cynthia out of the photo lineup but did not immediately pick out appellant. Carlson asked to see the photo lineup with appellant's picture a second time. Fort Worth Police Officer Carlos Cespedes testified that, shortly after Carlson was attacked, Cynthia allowed him into her house to speak to appellant. When he went inside Cynthia's house, he saw appellant on the bed in the back bedroom. Appellant did not look like he was sleeping. Cynthia then denied Officer Cespedes any further access to search her house.

Cynthia was called as a witness by the State. She stated that she did not want to testify in this case. Cynthia denied that she had offered to let Carlson sleep on her couch. She stated that she let him sleep one time in her laundry room. After that night, he went back to his spot. Cynthia testified that appellant had gone with her to Carlson's spot to get some money that Carlson had stolen from her. While she took a hammer, she did not use it. Instead, she kicked Carlson to wake him up. Cynthia stated that Carlson had given her $2 and $5 from time to time and that he then took $80 from her. She did remember giving a prior statement in which she stated that she gave the hammer to appellant but testified at trial that she did not use the hammer and took it back home. Cynthia stated that, after she and appellant confronted Carlson, they both went back to her house and went to bed. She admitted that she had been smoking crack "[o]ff and on" during this time.

*Analysis*

Carlson unequivocally indentified appellant in open court as the man who attacked him with a hammer and held him down while Cynthia took $20 from his pockets. Carlson based this identification on the three times he had seen appellant prior to the attack. While Carlson admitted to drinking before he went to sleep, there is no evidence in the record that he was drunk when Cynthia and appellant woke him.

As stated above, the jury was the sole judge of the weight and credibility of the witnesses' testimony under Articles 36.13 and 38.04. As such, the jury was free to accept or reject any or all of a witness's testimony.

After reviewing all of the evidence in the light most favorable to the verdict, we find that a rational jury could have found the essential elements of the offense beyond a reasonable doubt. Therefore, the evidence is legally sufficient to support the conviction. Further, after reviewing

4

all of the evidence in a neutral light, we find that neither is the evidence supporting the verdict so weak that the verdict is clearly wrong and manifestly unjust nor is the verdict against the great weight and preponderance of the conflicting evidence. The evidence is factually sufficient to support the conviction. Both issues are overruled.

*Holding*

The judgment of the trial court is modified to reflect that appellant entered a plea of true to the enhancement allegation. As modified, the judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


July 22, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.