NO. 07-09-00308-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



OCTOBER
12, 2010

 



 

RICHARD P. ESCH, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 364TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2006-412,999; HONORABLE JIM BOB DARNELL, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, Richard P. Esch, appeals his conviction by jury for the offense of
causing serious bodily injury to a child,[1]
and jury-assessed punishment of fifty-five years
incarceration in the Institutional Division of the Texas Department of Criminal
Justice (ID-TDCJ).  We will modify the
judgment and affirm.

Background

            In
the early morning hours of March 7, 2005, personnel at University Medical
Center (UMC) in Lubbock, Texas, reported their suspicion that appellant’s
daughter, Kylie, had been the victim of child abuse.  According to members of the staff, Kylie had
suffered multiple injuries, including shaken baby syndrome.  

            Appellant
and Kylie’s mother, Stephanie Hersom, had three
children together.  Kylie was the
youngest of these children and was approximately two and a half months old at
the time that the suspected abuse was reported. 
At that time, appellant was the primary caretaker of the children, so he
was considered the primary suspect in the abuse.

            On
March 4, 2005, appellant watched the children while Hersom
went to work.  During a break in her work
day, Hersom called appellant to check on the
children, and appellant informed Hersom that Kylie
had thrown up three or four times.  Hersom called appellant again during a later break, and
appellant informed her that the children were with Cathy and Crystal Timms so that appellant could go look for a job.  The Timmses watched
the children on March 4 for approximately five hours.  When Hersom
returned home from work, Kylie appeared to be well and in good spirits.

            On
March 5, Hersom again had to work.  She did not notice anything wrong with Kylie
before leaving for work.  Hersom called appellant during a break and appellant told
her that Kylie did not eat much, but appellant did not seem concerned about
this.  Hersom’s
cousin, Lisa Murdock, contacted Hersom and offered to
watch Kylie for a portion of the day.  Hersom was still at work when Murdock arrived to take
Kylie.  When Murdock entered the home,
she noticed that the two older children were covered in baby oil and had been
writing on each other with markers. 
Murdock found Kylie alone in the master bedroom with her face covered by
a blanket.  Kylie was sucking on an empty
bottle.  Murdock described Kylie as
unresponsive and, when Murdock picked Kylie up, Kylie wimpered
and moaned, which struck Murdock as odd. 
Murdock changed Kylie’s diaper and noticed that Kylie had a new bruise
on her chest.  When she asked appellant
about the bruise, appellant told her that one of the older children had fallen
on Kylie.  Over the course of the time
that Murdock spent with Kylie, Murdock felt that Kylie was just not acting like
herself.  According to Murdock, Kylie was
lethargic, unresponsive, and appeared to be in pain.  Murdock called Hersom
at work and recommended that Kylie be taken to the emergency room.  Hersom called
appellant and asked him to take Kylie to the emergency room, but appellant got
upset and refused to take Kylie.

            Hersom went straight home after she got off work.  Murdock still had Kylie.  Hersom again talked
to appellant about taking Kylie to the emergency room.  After some argument, appellant agreed to pick
Kylie up from Murdock and take her to the emergency room.  At the Levelland
Hospital emergency room, Hersom informed the staff of
the symptoms that Murdock had described to her. 
Appellant added that Kylie had been vomiting and had diarrhea.  The emergency room diagnosed Kylie with
gastroenteritis and dehydration and released her.

            The
following morning, March 6, Hersom awoke to find
appellant tending to Kylie.  Kylie was
crying and Hersom witnessed appellant spank Kylie on
the behind.  Hersom
confronted appellant regarding the spanking, which angered appellant.  Kylie looked worse than she had the night
before and cried throughout the morning. 
By the evening, Kylie’s condition had deteriorated further.  She had become very pale and laid in her crib lifelessly. 
Around 5:00 p.m., Hersom noticed that Kylie’s
hands and feet began to twitch and, at some point thereafter, Kylie’s face
began to twitch as well.  Appellant and Hersom took the children to Hersom’s
mother’s house as her mother was going to watch the children that evening.  Upon seeing Kylie’s condition, Hersom’s mother told appellant and Hersom
to take Kylie to the emergency room immediately.

            At
the emergency room, Hersom and appellant again
recounted Kylie’s symptoms to the doctors. 
After examining Kylie, the doctors informed Hersom
and appellant that blood was found in Kylie’s spinal column and that she would
have to be “life-flighted” to UMC in Lubbock.  

            As
mentioned before, personnel at UMC suspected that Kylie had been abused, so
they contacted Children’s Protective Services (CPS).  CPS investigator, Jamie Blount, went to the
hospital to investigate the report.  As
part of the investigation, Blount interviewed appellant.  Blount described appellant as “curt and
dismissive” during the interview. 
Appellant admitted that he was Kylie’s primary caretaker on March 5 and
6.  Appellant told Blount that one of the
older children had fallen on Kylie’s chest, and that Kylie had not had much to
eat or drink since that incident. 
Because appellant was Kylie’s primary caregiver during the times that
Kylie’s injuries were believed to have occurred, Blount believed that appellant
was the primary suspect in causing Kylie’s injuries.

            Subsequently,
the Wolfforth Police Department began a criminal investigation into the
injuries to Kylie.  Wolfforth Police
Chief Rick Scott obtained background information on the case from CPS and
Kylie’s doctors.  Appellant was
interviewed by police on four different occasions and gave two written
statements to the police.  In one of the
interviews, about a week after the investigation began, appellant told police
that he had performed CPR on Kylie on March 4. 
According to appellant, Kylie appeared to have asphyxiated on vomit
necessitating appellant’s performance of CPR. 
However, appellant did not call emergency services nor did he inform Hersom of his need to perform CPR on Kylie on March 4.  After an approximate year-long investigation
into Kylie’s injuries, Chief Scott determined that appellant likely caused
Kylie’s injuries.

            Appellant
was indicted for the offense of causing serious bodily injury to a child.  He was further alleged to have used a deadly
weapon in the commission of the offense, to-wit, his
hands.  Appellant pled not guilty and the
case proceeded to trial.  At the close of
evidence, the jury found appellant guilty of the indicted offense and made an
affirmative deadly weapon finding. 
Following a hearing on punishment, the jury sentenced appellant to
incarceration in the ID-TDCJ for a period of fifty-five years and assessed a
$10,000 fine.  The trial court
subsequently entered a Judgment of Conviction by Jury that memorialized the
jury’s verdicts, but that also assessed court costs against appellant in an
amount of $9,637.50.[2]  It is from this judgment that appellant
appeals.

            By
his appeal, appellant presents four issues. 
By his first two issues, appellant challenges the factual sufficiency of
the evidence used to establish his guilt, specifically in reference to identity
and causation.  By his third issue,
appellant contends that the trial court abused its discretion by excluding
expert witness testimony offered by appellant. 
By his fourth issue, appellant contends that the evidence was legally
insufficient to support the trial court’s assessment of court-appointed
attorney’s fees against appellant.  

Factual Sufficiency

            By
his first two issues, appellant challenges the factual sufficiency of the
evidence to support his conviction for the offense of injury to a child.  Specifically, appellant challenges the
sufficiency of the evidence to establish that he was the person that committed
the crime, and that the serious bodily injuries sustained by Kylie were the
result of a crime.

Standard of Review

            When an appellant challenges the factual sufficiency of
the evidence supporting his conviction, the reviewing court must determine
whether, considering all the evidence in a neutral light, the jury was
rationally justified in finding the appellant guilty beyond a reasonable
doubt.  See Watson v. State,
204 S.W.3d 404, 415 (Tex.Crim.App.
2006).  In performing a factual
sufficiency review, we must give deference to the fact finder’s determinations
if supported by evidence and may not order a new trial simply because we may
disagree with the verdict.  See id.
at 417.  As an
appellate court, we are not justified in ordering a new trial unless there is
some objective basis in the record demonstrating that either the evidence
supporting the jury’s verdict is so weak as to be clearly wrong or manifestly
unjust or the great weight and preponderance of the evidence contradicts the
jury’s verdict.  See Laster v. State, 275 S.W.3d 512, 518 (Tex.Crim.App. 2009); Watson, 204 S.W.3d at 417.  Additionally, an appellate opinion addressing
factual sufficiency must include a discussion of the most important evidence
that appellant claims undermines the jury’s
verdict.  Sims v.
State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).  However, when a defendant’s version of the
facts conflicts with other evidence, it is the jury’s prerogative to judge the
credibility of the evidence and to ascribe the weight to be given to the
evidence.  Jones v.
State, 944 S.W.2d 642, 647-48 (Tex.Crim.App.
1996).  

Identity

            By
his first issue, appellant contends that the evidence that he was the person
that caused Kylie’s injuries was factually insufficient.  Appellant’s contention is premised on the
emergency room diagnosis of March 5, which appellant contends is inconsistent
with Kylie having sustained shaken baby syndrome injuries on or before March
5.  The State responds that the evidence
is factually sufficient to establish that appellant caused Kylie’s injuries
and, further, appellant did not raise this alternative hypothesis at any time
during trial.

            In
the present case, appellant contends that, if the evidence establishes that
Kylie did not sustain the injuries for which he is charged until after March 5,
then the evidence is too weak to establish that appellant, rather than Hersom, caused Kylie’s injuries.  Appellant cites the emergency room report of
March 5 as providing that Kylie “looks well, alert, and in no distress.”  Combined with expert medical opinion
testimony that the onset of symptoms in a shaken baby syndrome case appear almost
immediately and rapidly deteriorate, appellant’s main argument presented by
this issue is that it was more probable that Kylie’s injuries occurred on March
6, when both appellant and Hersom spent the day with
the child.  

            None
of the medical experts could testify as to the specific time that Kylie
sustained the injuries for which appellant was tried.  Further, there was no eyewitness of the
incident causing Kylie’s injuries. 
Therefore, evidence establishing that anyone caused Kylie’s injuries
will be circumstantial.  Evidence was
presented that Kylie had sustained injuries at varying periods of time, and
that at least one of these periods was when appellant had nearly exclusive care
of the child.  Further, the jury heard
evidence that appellant was reluctant to take Kylie for medical care, even
after Kylie’s condition began to rapidly deteriorate.  In addition, Hersom
testified that appellant’s attitude toward Kylie had become one of anger or
frustration and that, in the morning of March 6, she saw appellant spank Kylie
for keeping appellant awake all night. 
Clearly, the evidence established that appellant had access to Kylie
throughout the time that Kylie may have sustained these injuries.

            However,
the jury also heard evidence that Hersom had access
to the child during the evening and night hours of March 5 and throughout the
day of March 6.  Evidence was presented
that Hersom exhibited a somewhat cavalier attitude in
the way that she cared for her children. 
In addition, while Hersom suffered from a
disability to her legs, evidence was presented to the jury that would have
allowed the jury to infer that Hersom had the
physical ability to have inflicted the injuries to Kylie.

            Appellant’s main argument under his first issue is
nothing more than a reasonable alternative hypothesis of how Kylie sustained
the shaken baby syndrome injuries.  While
such a reasonable hypothesis may be relevant to our review of the factual
sufficiency of the evidence, it is not determinative.  See Wilson v. State, 7 S.W.3d 136, 141 (Tex.Crim.App.
1999).  According to appellant’s
hypothesis, Kylie’s injuries could have been caused by Hersom,
rather than appellant, because Hersom had the
opportunity to commit the offense.  While
it is possible that Kylie was not injured until a time when Hersom
had access to, and, therefore, opportunity to have inflicted the injuries on
Kylie, appellant’s hypothetical version of the facts conflicts with other
evidence that presents a version of the facts in which appellant intentionally
or knowingly caused Kylie’s serious bodily injury.  By definition, evidence that would allow a
jury to rationally conclude that appellant intentionally or knowingly caused
Kylie serious bodily injury beyond a reasonable doubt is factually sufficient
evidence, regardless of the existence of evidence that would support the
possibility that Kylie’s injuries might have been caused by another
person.  Further, when an appellant
presents a factual sufficiency challenge based on a version of the facts that
conflicts with other evidence, it is the jury’s prerogative to judge the
credibility of the evidence and to ascribe the weight to be given to the
evidence, Jones, 944 S.W.2d at 647-48, and we, as a reviewing court, are
not at liberty to substitute our judgment for that of the jury.  See Watson, 204
S.W.3d at 417.

            Consequently,
we overrule appellant’s first issue.

Causation

            By
his second issue, appellant contends that the evidence that Kylie’s injuries
were the result of shaken baby syndrome is factually insufficient.  Appellant’s argument is premised on the Levelland Hospital’s March 6 diagnosis of Kylie possibly
having meningitis.  The State responds
that the great weight and preponderance of the medical evidence in the case
supports the conclusion that Kylie’s symptoms were the result of shaken baby
syndrome.

            Appellant
points to the diagnosis of possible meningitis contained in the
above-referenced medical record and then presents a number of symptoms of
meningitis that are consistent with the symptoms exhibited by Kylie.  However, none of these symptoms of meningitis
were presented to the jury in any manner. 
Rather, appellant cites sources outside of the record to support his
argument.  In fact, this theory of
causation was evidenced to the jury, in total, by nothing more than the
diagnosis of possible meningitis found in this one medical record.  Even if we were to assume that the jury
should have seized upon this one piece of evidence to the exclusion of the
other evidence of causation, the medical record cited by appellant diagnoses
Kylie with either meningitis or trauma. 
Further, all of the expert medical opinion testimony offered at trial
was consistent that Kylie’s injuries were the result of shaken baby syndrome.  

            We
overrule appellant’s second issue.

Exclusion of Expert Testimony

            By
his third issue, appellant contends that the trial court erred in excluding the
expert testimony of Wendy Thal.  According to appellant, Thal’s
testimony was relevant to implicate Hersom in causing
Kylie’s injuries and, thus, would have decreased the likelihood that appellant
committed the crime.  The State responds
that appellant failed to timely designate Thal as an
expert witness, as had been ordered by the trial court, and, even if it was
error for the trial court to have excluded Thal as an
expert, the error was harmless because Thal’s
testimony was cumulative.

            A
trial court’s decision to admit or exclude evidence, including determining
whether a witness is qualified as an expert, is reviewed under an abuse of
discretion standard.  See Tex. R. Evid.
104(a); Penry v. State,
903 S.W.2d 715, 762 (Tex.Crim.App. 1995).  The trial court abuses its discretion if its
ruling is so clearly wrong as to be outside the zone of reasonable disagreement.  See McDonald v. State, 179 S.W.3d 571, 576 (Tex.Crim.App.
2005).  Error in ruling on the
admissibility of evidence is generally non-constitutional error, see Walters
v. State, 247 S.W.3d 204, 219 (Tex.Crim.App.
2007), and, as such, reversal is justified only if the error affected
appellant’s substantial rights.  See
Tex. R. App. P. 44.2(b).  

            Appellant
offered Thal as an expert witness to testify
regarding her evaluation of Hersom and Kylie’s
interaction and bonding as of May of 2005. 
Thal, who performed this evaluation as a nurse
consultant for CPS, testified, by way of a bill of exception, that Kylie was
not bonded to Hersom and that Kylie appeared to be
uncomfortable in her mother’s presence.  Thal further testified that she had evaluated appellant at
the time that she evaluated Hersom, but that the
bonding assessment report she had prepared relating to appellant had been
lost.  

            While
it appears that the trial court excluded Thal as an
expert on the basis of appellant’s failure to disclose her as an expert witness
in his pre-trial disclosures, we believe that the record establishes that the
trial court’s ruling was firmly within the zone of reasonable disagreement.[3]  

First, nothing in the bill of
exception presenting Thal’s testimony establishes
that she would be qualified to testify as an expert on the subject matter upon
which she was to testify.  See Penry, 903 S.W.2d at 762.  According to Thal’s
testimony, at the time of trial, she was an assistant professor at Texas Tech
University and she taught both undergraduate classes and classes in the nurse
practitioner program.  In 2005, Thal was working with West Texas A & M University and
as a nurse consultant with CPS.  While Thal testified that she performed bonding assessments as
part of her duties as a CPS consultant, nothing in her testimony established
how she would be expertly qualified to perform such an assessment.  Thal did not
testify regarding her education, did not quantify her experience working with
CPS, and did not identify any additional training that would reasonably qualify
her to be an expert in assessing the bond between a mother and an infant
child.  Thus, because appellant wholly
failed to establish that Thal was an expert on the
subject matter upon which she was called to testify, we conclude that the trial
court did not abuse its discretion in excluding Thal’s
testimony as an expert.[4]

Further, even if the evidence should
have been admitted as expert testimony, its exclusion was not harmful to
appellant.  The lack of a bond between Hersom and Kylie would be expected when four-month-old
Kylie had been separated from her mother for the previous two months.  Additionally, this evidence was cumulative of
other evidence establishing that Hersom was not an
ideal mother to Kylie or to her other children. 
Finally, because Thal’s bonding assessment
relating to appellant was not available, Thal’s assessment of Hersom was
significantly lessened in terms of exculpating appellant since the jury was
unable to compare the assessments and because nothing in Thal’s
assessment of Hersom in any way indicated that Hersom exhibited violent tendencies toward Kylie.

Because the trial court did not abuse
its discretion in excluding Thal as an expert on the
basis of her lack of qualifications, and because the exclusion of Thal’s expert testimony did not affect a substantial right
of appellant, we overrule appellant’s third issue.

Assessment of Court-Appointed
Attorney’s Fees

            By
his fourth and final issue, appellant contends that the evidence was legally
insufficient to support the trial court’s assessment of court-appointed
attorney’s fees.  The State concedes
error under this issue.  Both parties
contend that the error may be remedied by this Court striking the assessment of
attorney’s fees from the trial court’s judgment.

            Article
26.05(g) of the Texas Code of Criminal Procedure provides, “[i]f the court determines that a defendant has financial
resources that enable him to offset in part or in whole the costs of the legal
services provided, . . . the court shall order the defendant to pay during the
pendency of the charges or, if convicted, as court costs the amount that it
finds the defendant is able to pay.”  Tex. Code Crim. Proc. Ann. art. 26.05(g)
(Vernon Supp. 2009).  The key
factors in determining the propriety of ordering reimbursement of fees are the
defendant’s financial resources and ability to pay.  Mayer v. State, 309
S.W.3d 552, 556 (Tex.Crim.App. 2010).  “Without evidence to demonstrate appellant’s
financial resources to offset the costs of the legal services, the trial court
erred in ordering reimbursement of appointed attorney fees.”  Mayer v. State, 274 S.W.3d 898, 901 (Tex.App.—Amarillo 2008), aff’d,
309 S.W.3d at 558.  

            Here,
the record includes no evidence that appellant had the ability to pay
attorney’s fees at the time that the trial court assessed them.  As such, we conclude that the evidence
supporting this portion of the judgment is legally insufficient and modify the
judgment to remove the assessment of $9,264.50 for attorney’s fees.  See id. at
902.

            We
sustain appellant’s fourth issue and will modify the judgment to delete the
trial court’s assessment of attorney’s fees.

Conclusion

            For
the foregoing reasons, we modify the judgment of the trial court to delete the
assessment of $9,264.50 for attorney’s fees. 
As modified, we affirm the judgment of the trial court.

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

            








Do
not publish.  











[1] See Tex. Penal Code Ann. § 22.04 (a)(1), (e) (Vernon Supp. 2009).





[2] The Judgment further
delineates that $373.00 of these costs are for court costs, while the remaining
$9,264.50 are for court-appointed attorney’s fees.





[3] For purposes of our
analysis of this issue, we will assume that the trial court’s exclusion of Thal based on appellant’s failure to disclose her as an
expert witness was erroneous.  However,
we wish to emphasize that this assumption is not an expression of our opinion
on that matter.

 





[4] Appellant did not
offer Thal’s testimony as a fact witness.